**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

RECEIVED

2007 JUN 20  A 11: 36

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| **BILLY WILLIAMS and** | ) |
| **TERESA WILLIAMS,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **BALBOA INSURANCE COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

**CASE NO.**

1:07 CV549-wha

## NOTICE OF REMOVAL

TO:    Dan Talmadge, Esquire
       Morris, Cary, Andrews,
       Talmadge & Jones, L.L.C.
       P.O. Box 1649
       Dothan, AL 36302

       Circuit Clerk
       Coffee County, Alabama, Enterprise Division
       P.O. Box 311284
       Enterprise, AL 36331

       Formerly known as Circuit Court of Coffee County, Enterprise Division,

Case Number CV-07-94

       Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, defendant Balboa Insurance

Company ("Balboa"), hereby serves notice of the removal of this cause from the

Circuit Court of Coffee County, Alabama, Enterprise Division, to The United

States District Court for the Middle District of Alabama, Southern Division, and respectfully shows unto the Court as follows:

1.    This lawsuit was originally filed on May 16, 2007, in the Circuit Court of Coffee County, Alabama, Enterprise Division, and assigned Civil Action Number CV-07-94.

2.    Defendant was served on May 21, 2007.

3.    This Notice of Removal is filed within thirty (30) days of the date of service of the Summons and Complaint upon the first served defendant. *See* 28 U.S.C. § 1446(b).

4.    Pursuant to 28 U.S.C. § 1446(d), defendant has this day served a copy of this Notice of Removal on counsel for plaintiffs and on the Clerk of the Circuit Court of Coffee County, Alabama, Enterprise Division.

5.    The documents attached hereto as Exhibit A constitute a copy of the process, pleadings, and orders served upon defendant in this action.

## I.    DIVERSITY JURISDICTION

6.    This removal is based on diversity jurisdiction.  28 U.S.C. § 1332.

### A.    Plaintiff Is Diverse From Defendant.

7.    Plaintiffs are individuals who are residents of Coffee County, Alabama. (Complaint).

8.    Balboa Insurance Company is a corporation organized under the laws of the State of California, and its principal place of business is in California. (Complaint).

9.    Because the state of citizenship of the defendant is completely diverse from plaintiffs' state of citizenship, there is complete diversity of citizenship.

**B.    The Amount In Controversy Exceeds $75,000.00.**

10.    In the present case, plaintiffs demand judgment against defendant on their claims of breach of contract and bad faith.  Plaintiffs seek compensatory and punitive damages relating to Balboa's alleged failure to pay an insurance claim arising out of fire damage to plaintiffs' home. (Complaint).

11.    A defendant may remove a suit to federal court notwithstanding the failure of the plaintiff to plead a specific dollar amount in controversy.  *See Steele v. Underwriters Adjusting Company, Inc.*, 649 F. Supp. 1414, 1415 (M.D. Ala. 1986) (to disallow removal just because plaintiff did not allege a jurisdictional amount would be "simply unfair").  If the rule was otherwise, any plaintiff could avoid removal simply by declining to place a specific dollar value upon its claim. *See White v. J.C. Penny Life Ins. Co.*, 861 F. Supp. 25, 26 (S.D. W.Va. 1994). Accordingly, where there is an unspecified claim for damages, as here, a removing defendant need only show "by a preponderance of the evidence that the amount in controversy more likely than not exceeds the [$75,000] jurisdictional requirement."

*Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996); *see also* 28 U.S.C. § 1332(a). This low burden of proof is "warranted because there is simply no estimate of damages to which a court may defer." *Id.*

12. Calculation of the amount in controversy includes both compensatory and punitive damages. *Bell v. Preferred Life Assurance Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943); *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987). For purposes of establishing the jurisdictional amount in controversy, "multiple claims for relief can and should be considered together in determining [that] amount." *Howard v. Globe Life Ins. Co.*, 973 F. Supp 1412, 1418 (N.D. Fla. 1996) (citing with approval *Pipes v. American Security Ins. Co.*, CV 96-H-206-NE (N.D. Ala. February 29, 1996)); 14A Wright and Miller, *Federal Practice and Procedure* § 3704 (value of claims are added together to determine jurisdictional amount).

13. The claims in plaintiffs' Complaint relate to insurance coverage on the property located at 678 County Road 620 in Enterprise, Alabama. The coverage limit for the dwelling on the property that is the subject of the Complaint is $32,311.00, subject to a $500.00 deductible. (November 27, 2005, Notice of Placement, attached as part of Exhibit B). Plaintiffs made a claim for benefits relating to a fire involving the dwelling on the property. After investigating the claim, Balboa made payment in the total amount of $10,591.39. (September 26,

2006 letter to GMAC from Tancy Nelson, Claim Representative, Balboa Insurance Company, attached to the Affidavit of Larry Willeford, filed herewith as Exhibit C). Plaintiffs have made a claim for additional payments, asserting that their damages exceed the total limits of the coverage on the dwelling and have demanded full payment. (March 23, 2007 letter and attachments thereto from Billy and Teresa Williams to Tancy Nelson, attached to the Affidavit of Larry Willeford). Plaintiffs' claim for additional payments under the coverage, therefore, equals $21,219.61 ($32,311.00 less $500.00 deductible, less $10,591.39 = $21,219.61).

14.     Based on the allegations in the Complaint, the amount in controversy in the present case more likely than not exceeds $75,000.00. As noted above, plaintiffs' complaint alleges breach of contract and bad faith. (Complaint). In addition to the dollar amount of claimed additional coverage set forth above, these claims (though defendant insists that they are without merit) create a basis on which Plaintiffs could potentially recover compensatory damages in the form of mental anguish damages, and could potentially recover punitive damages[1]. *National Insurance Association v. Sockwell*, 829 So. 2d 111 (Ala. 2002) (mental anguish damages and punitive damages allowed for bad faith claim); *United*

---

[1] Defendant contends that plaintiffs are not entitled to any damages in this action, including damages for mental anguish and punitive damages, and reserves all defenses to plaintiffs' claims. The mental anguish damages and punitive damages potentially available under plaintiffs' claims are, however, clearly included in the "amount in controversy."

*Services Auto. Ass'n v. Wade*, 544 So. 2d 906, 917 (Ala. 1989) (punitive damages allow for bad faith).

15.    While defendant maintains that Plaintiffs are entitled to neither compensatory damages nor punitive damages in this action, the availability of mental anguish damages alone results in an amount in controversy in excess of the $75,000.00 jurisdictional threshold. The Alabama courts have routinely allowed mental anguish awards in cases involving claimants' primary homes in an amount that would result in compensatory damages in excess of $75,000.00. *See, e.g., Cochran v. Ward*, 935 So.2d 1169, 1176-1177 (Ala. 2006) (affirming an award of mental anguish damages in the amount of $275,000.00 in conjunction with economic damages of $75,000.00 and noting that it is not unusual for juries to award compensatory damages for mental anguish at or above the level awarded in that case); *Southern Energy Homes, Inc. v. Washington*, 774 So. 2d 505, 518-519 (Ala. 2000) (plaintiff sued for breach of contract and breach of warranty relating to a manufactured home purchased for $19,320.00, and the Alabama Supreme Court affirmed a jury verdict in the amount of $375,000.00, including a substantial portion allocable to mental anguish); *Liberty Homes, Inc. v. Epperson,* 581 So. 2d 449 (Ala. 1991) (the court affirmed a total verdict of $194,174.70 in plaintiff's breach of contract case involving their manufactured home, which they purchased for $25,982.50); *Alabama Power Company v. Harmon*, 483 So. 2d 386 (Ala. 1986)

(affirming a mental anguish award in a breach of contract claim relating to plaintiff's manufactured home in the amount of $75,000.00).

16.    Furthermore, when combined with plaintiffs' claim for punitive damages, it cannot be seriously disputed that the amount in controversy in this case is in excess of $75,000.00. Alabama courts have frequently allowed compensatory damages and punitive damage awards in an excess of $75,000.00 in cases seeking such damages, including cases alleging bad faith as alleged in this case. *See, e.g., National Insurance Association v. Sockwell*, 829 So. 2d 111 (Ala. 2002) (jury award of $201,000.00 for mental anguish damages and $600,000.00 in punitive damages on a bad faith claim); *Ford Motor Company v. Sperau*, 708 So. 2d. 111 (Ala. 1997) (jury award of $6 million in punitive damages, and award of $2.5 million in compensatory damages for mental anguish); *First Commercial Bank v. Spivey*, 694 So. 2d 1316 (Ala. 1997) (affirming award of damages for emotional distress in a fraud case for as much as $450,000); *Foremost Insurance Company v. Parham*, 693 So. 2d 409 (Ala. 1997) (punitive damages with ratios to compensatory damages of approximately 94 to 1 ($175,000 punitive to $1,868 compensatory) and 121 to 1 ($173,000 punitive to $1,429.43 compensatory)). Other courts have commented on the large damage awards in Alabama. *See, e.g., Smith v. The Equitable*, 148 F. Supp. 2d 1247 (N.D. Ala. 2001) (holding that the failure to remove a bad faith case with an unspecified demand for mental anguish

and punitive damages on diversity grounds was a procedural defect that rendered a later removal on other grounds defective because the claim for mental anguish damages and punitive damages for bad faith clearly resulted in an amount in controversy in excess of $75,000.00); *Jackson v. American Banker Ins. Co. of Florida*, 976 F. Supp. 1450 (S.D. Ala. 1997) (reviewing recent history of large punitive damages verdicts in Alabama).

17.    Considering plaintiffs' allegations, which, if substantiated by plaintiffs and believed by a jury, could support both mental anguish damages and punitive damages, and considering the recent history of Alabama courts in awarding large damage awards for both mental anguish and punitive damages, it is more likely than not that the amount in controversy in the present case exceeds $75,000, exclusive of interest and costs.

18.    Based on the foregoing, this action is one over which this Court has original jurisdiction pursuant to the provisions of 28 U.S.C. § 1332, and this action is removable under 28 U.S.C. § 1441, et seq.

HENRY T. MORRISSETTE
Bar No.: 7622-E54H

8

OF COUNSEL:

HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama  36601
Telephone:  (251) 432-5511
Fax:          (251) 694-6375
E-Mail: hmorrissette@handarendall.com


                              STEPHEN N. FITTS, III
                              Bar No.: 9079-T52F

HAND ARENDALL, LLC
2001 Park Place North, Suite 1200
Birmingham, Alabama  35203
Telephone:  (205) 324-4400
Facsimile:  (205) 397-1316
E-Mail: sfitts@handarendall.com

                              Attorneys for Defendant Balboa Insurance
                              Company


### CERTIFICATE OF SERVICE

        I hereby certify that on June 19, 2007, I served the foregoing via United
States mail on the following:

Dan Talmadge, Esquire
Morris, Cary, Andrews,
Talmadge & Jones, L.L.C.
P.O. Box 1649
Dothan, AL 36302

Circuit Clerk, Coffee County, Alabama
Enterprise Division
P.O. Box 311284
Enterprise, AL 36331

                              _____
                              OF COUNSEL

626668

9

## IN THE CIRCUIT COURT OF COFFEE COUNTY, ALABAMA
## ENTERPRISE DIVISION

BILLY WILLIAMS and          )
TERESA WILLIAMS,            )
                            )
    Plaintiffs,           )
                            )
v.                          )          Civil Action No. _Cv-07-94_
                            )
BALBOA INSURANCE COMPANY,   )
                            )
    Defendants.           )



## CIVIL SUMMONS

NOTICE TO:  Balboa Insurance Company
                c/o Superintendent of Insurance
                3349 Michelson Drive, Suite 200
                Irvine, CA 92612

     The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written answer, either admitting or denying each allegation in the complaint to the Plaintiff's Attorney, DAN TALMADGE, whose address is

MORRIS, CARY, ANDREWS, TALMADGE, JONES & DRIGGERS, LLC
P.O. BOX 1649
3334 Ross Clark Circle
DOTHAN, ALABAMA 36302

     This answer must be mailed or delivered within **30 days** after this summons and complaint were delivered to you or a judgment by default may be entered against you for the money or other things demanded in the complaint. You must also file the original of your answer with the Clerk of this court.

    ☐     TO ANY SHERIFF OR ANY PERSON AUTHORIZED by either rules 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

    ☐     This service by certified mail of this summons is initiated upon the written request of DAN TALMADGE pursuant to Rule 4.1(c ) of the Alabama Rules of Civil Procedure.


EXHIBIT
A

_____          _____
Date                             Clerk/Register

RETURN ON SERVICE:

☐        Certified Mail return receipt received in this office on _____
         (Return receipt hereto attached).

☐        I certify that I personally delivered a copy of the summons and Complaint to
         _____  in
         _____ County, Alabama on _____
         (Date).

_____          _____
Date                             Server Signature

_____          _____
                                 Type of Process Server
Address of Server

IN THE CIRCUIT COURT OF COFFEE COUNTY, ALABAMA
ENTERPRISE DIVISION

BILLY WILLIAMS and )
TERESA WILLIAMS, )
       )
    Plaintiffs, )
       )
v. )    Civil Action No. _Cv 07-94_
       )
BALBOA INSURANCE COMPANY, )
       )
    Defendants. )

## COMPLAINT

### Count I

1.     Defendant Balboa Insurance Company (hereinafter "defendant") is a corporation, organized and existing under the laws of the State of California, and engaged in the business of issuing insurance policies.

2.     On or about May 27, 2005, defendant issued a policy of insurance insuring the home of plaintiffs Billy Williams and Teresa Williams (hereinafter "plaintiffs") located at 678 County Road 620 in Enterprise, Alabama against loss by fire and other perils.

3.     The policy provided insurance coverage to the plaintiffs for the period beginning May 27, 2005 and ending May 27, 2006.

4.     On or about February 5, 2006, plaintiffs' home was damaged by fire.

5.     Plaintiffs gave defendant notice of said loss under said policy, and made a claim for benefits thereunder.

6.     Defendant has refused to pay said claim.

MAY 2007
FILED
J M Counts
Court Clerk
Coffee Co. Als

WHEREFORE, Plaintiffs demand judgment against defendant for compensatory damages in an amount exceeding the minimum jurisdictional limits of this Court, plus interest and costs.

## Count II

7.    Plaintiffs reallege paragraphs 1 through 5.

8.    Defendant has intentionally refused to pay plaintiffs' said claim under said policy and denied the same without lawful justification.

9.    Defendant's refusal to pay said claim was not based upon any reasonably legitimate, arguable, or debatable reason for denying the claim, when defendant refused to pay said claim.

10.    Defendant intentionally failed to determine whether or not there was any lawful basis for its refusal to pay said claim.

11.    Defendant acted in bad faith in refusing to pay said claim.

WHEREFORE, Plaintiffs demand judgment against defendant for compensatory and punitive damages in an amount exceeding the minimum jurisdictional limits of this Court, plus interest and costs.

Dan Talmadge (TAL013)
MORRIS, CARY, ANDREWS,
TALMADGE & JONES, LLC
P. O. Box 1649
Dothan, Alabama 36302
Tel. (334) 792-1420

## DEMAND FOR A JURY TRIAL

Plaintiffs demands a trial by jury.

Dan Talmadge

| State of Alabama<br>Unified Judicial System<br><br>Form ARCivP-93   Rev. 5/99 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Numb<br>`C V` [ ][ ][ ][ ][ ][ ][ ][ ] . [ ][ ]<br>Date of Filing:                    Judge Code:<br>[ ][ ] [ ][ ] [ ][ ][ ][ ]   [ ][ ][ ][ ][ ]<br>Month   Day   Year |
|---|---|---|

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF   COFFEE COUNTY                                              , ALABAMA
*(Name of County)*

BILLY WILLIAMS AND TERESA WILLIAMS                v.   BALBOA INSURANCE COMPANY
**Plaintiff**                                                                      **Defendant**

**First Plaintiff**  ☐ Business  ☑ Individual        **First Defendant**  ☑ Business  ☐ Individual
                     ☐ Government ☐ Other                                    ☐ Government ☐ Other

---

**NATURE OF SUIT:**  Select primary cause of action, by checking box *(check only one)* that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PROPERTY INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

*[Round stamp: 1 2 3 4 5 6 7 8 9 10 11 ... 30 31   MAY 2007   FILED   J M Counts   Circuit Clerk   Coffee Co. AL]*

---

**ORIGIN** *(check one):*   F ☑ INITIAL FILING     A ☐ APPEAL FROM DISTRICT COURT     O ☐ OTHER: _____
                            R ☐ REMANDED           T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

---

**HAS JURY TRIAL BEEN DEMANDED?**   ☑ YES  ☐ NO       Note:  Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

---

**RELIEF REQUESTED:**   ☑ MONETARY AWARD REQUESTED       ☐ NO MONETARY AWARD REQUESTED

---

ATTORNEY CODE:
`T A L 0 1 3`         Date  5/9/07              Signature of Attorney/Party filing this form

---

**MEDIATION REQUESTED:**   ☐ YES  ☐ NO  ☑ UNDECIDED

## COPY CERTIFICATION BY DOCUMENT CUSTODIAN

State of    California

County of    Orange

I,    Lawrence Serdenia    , hereby declare that the attached reproduction of

GMAC Mortgage, LLC Fire Insurance Policy
Description of Original Document


is a true, correct, and complete photocopy of a document in my possession or control.

_Serdenia_
Signature of Custodian of Original Document

3349 Michelson Drive, Suite 200

Irvine, CA 92612-8893


Subscribed and sworn to before me this    14th    day of    June    , 2007 by

Lawrence Serdenia

personally known to me ~~or proved to me on the basis of satisfactory evidence~~ to be the person(s) who appeared before me.

_Florence Diep_
Signature of Notary Public

FLORENCE DIEP
Commission # 1603339
Notary Public — California
Orange County
My Comm. Expires Sep 26, 2009


**Further Description of Attached Document**

Title or Type of Document:    Lender's Protection Fire Insurance Policy

Document Date:    7/30/04    Number of Pages:    20

Signer or Issuing Agency:    n/a

Capacity Claimed by Custodian: Individual Trustee

Custodian is Representing:    n/a


**EXHIBIT B**

**Lender's Protection  (Fire Insurance)**

Re:  **Billy and Teresa Williams**
     **678 CO Road 620, Enterprise, AL 36330**
     **Cert #: GM7136890**
     **Loan #: 0833002922**

The following forms are enclosed for your reference. Please note that coverage is not provided for your personal property or personal liability. Also, flood and earthquake are excluded.

| Form No. | Description |
|---|---|
| 01A09-MFDE0001-E1103 | Declaration |
| 01A09-MFMP0001-E1103 | Fire Insurance Policy Insuring Agreement |
| 01A09-MFPO0001-E1103 | Residential Property Fire Insurance Form |
| 01A09-MFPO0002-E1103 | Commercial Property Fire Insurance Form |
| 01A09-MFEN0001-E1103 | Unacceptable Risk Endorsement |
| F292E-R0894 | Automatic Coverage Endorsement |
| | |
| State Specific Endorsement: | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

(PM7\MF1F\01A09MFDE0001E1103)                                                    STK# 00 0000

## FIRE INSURANCE MASTER POLICY
### DECLARATIONS PAGE

## BALBOA INSURANCE COMPANY
(a stock company)
Home Office
3349 Michelson Drive, Suite 200, Irvine, CA 92612-8893

### POLICY NUMBER  6043-0002

**Item 1.**    NAMED INSURED:

Name:  GENERAL MOTORS ACCEPTANCE CORP. MORTGAGE    Agent: Gen. Motors Acceptance Corp. Mortgage

Street:  100 Witmer Road                                                       Street:  100 Witmer Road

City, State, Zip:  Horsham, PA 19044                                City, State, Zip:  Horsham, PA 19044

Agent Code: 6043

**Item 2.**    POLICY PERIOD

| FROM:<br>Month   Day   Year | TO:<br>Month   Day   Year |
|---|---|
| 10/01/04 | UNTIL CANCELLED |

12:01 A.M. standard time at the address of the Named Insured.

**Item 3. COVERAGE:** Coverage on residential and commercial properties shall be subject to The Fire Insurance Master Policy, the Residential Property Fire Insurance Form and the Commercial Property Fire Insurance Form, which is made part of this Policy. This coverage applies to direct physical loss or damage by the peril insured against to real property. No coverage is provided for contents, personal effects, additional living expense, fair rental value or liability.  NO COVERAGE IS PROVIDED UNDER THIS MASTER POLICY FOR LOSS CAUSED BY EARTHQUAKE OR FLOOD or any other cause of loss that is excluded by the Residential Property Fire Insurance Form or the Commercial Property Fire Insurance Form under which coverage is provided.

**Item 4.**    **PREMIUM:** The premium rates shall be computed as directed by the company.

**Item 5.**    **MAXIMUM AMOUNT OF INSURANCE:**

| **Types of Eligible Property** | **Maximum Amount of Insurance** | |
|---|---|---|
| Residential Property | limits $ 5,000,000 | / per described location |
| Commercial Property | limits $ 5,000,000 | / per described location |

**Item 6.**    **ENDORSEMENTS:** The endorsements listed below are attached to and form part of this policy.
See Attached List

**Item 7.**    **DEDUCTIBLE:** The following deductibles shall apply to each and every loss reported hereunder:
See Attached Schedule

Date of Issue ____ 7/30/04 _____        Countersignature _____

                                                                                         Authorized Representative

01A09-MFDE0001-E1103                          Page 1

## Lenders Protection - Deductible Schedule
Dwelling Fire Coverage

| | | Residential Occupied | Residential Vacant | Commercial Occupied | Commercial Vacant* | Comm.Vacant V&MM* | Status | Date Effective |
|---|---|---|---|---|---|---|---|---|
| 01 | Alabama | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 02 | Arizona | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 03 | Arkansas | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 04 | California | $500 | $750 | $1,000 | $1,000 | $5,000 | In Use | |
| 05 | Colorado | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 07 | Delaware | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 08 | District of Columbia | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 10 | Georgia | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 52 | Hawaii | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 12 | Illinois | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 13 | Indiana | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 14 | Iowa | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 16 | Kentucky | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 18 | Maine | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 19 | Maryland | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 21 | Michigan | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 22 | Minnesota | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 23 | Mississippi | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 24 | Missouri | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 25 | Montana | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 26 | Nebraska | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 27 | Nevada | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 28 | New Hampshire | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 29 | New Jersey | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 30 | New Mexico | $250 | $1,000 | $1,000 | $1,000 | $5,000 | In Use | |
| 32 | North Carolina | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 33 | North Dakota | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 34 | Ohio | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 35 | Oklahoma | $250 | $500 | $500 | $1,000 | $5,000 | In Use | |
| 36 | Oregon | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 37 | Pennsylvania | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 39 | South Carolina | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 40 | South Dakota | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 41 | Tennessee | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 42 | Texas | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 43 | Utah | $500 | $750 | $500 | $1,000 | $5,000 | In Use | |
| 44 | Vermont | $250 | $500 | $500 | $1,000 | $5,000 | In Use | |
| 47 | West Virginia | $250 | $1,000 | $500 | $1,000 | $5,000 | In Use | |
| 48 | Wisconsin | $500 | $500 | $500 | $1,000 | $5,000 | In Use | |
| 49 | Wyoming | $500 | $500 | $500 | $1,000 | $5,000 | In Use | |

* deductible amount or 2%, whichever is greater

7/19/02

(PM7\MF1F\01A09MFMP0001E1103)                                                    STK# 00 0000

# FIRE INSURANCE MASTER POLICY

### Lenders Protection Program

### INSURING AGREEMENT

In consideration of the payment of the premium, and subject to all of the provisions of the policy forms issued under this Master Policy, WE agree to indemnify YOU or YOUR legal representatives for any amount that YOU may be entitled to recover as the result of a covered LOSS. The BORROWER shall be considered an additional insured with respect to any residual amounts of insurance over and above YOUR insurable interest.

### DEFINITIONS

Whenever used in this Master Policy, the following words shall have the meanings as shown herein:

"YOU", "YOUR", "YOURS" means the entity shown on the DECLARATIONS PAGE of this Master Policy, under the caption of "Named Insured," which has an interest in real property as the direct result of a mortgage, second mortgage, other lien instrument, or as the result of an agreement for the servicing of such contracts.

"WE", "US", "OUR" and "OURS" means the Company that underwrites this insurance.

"COMMERCIAL PROPERTY" means the buildings identified as the DESCRIBED LOCATION in the EVIDENCE OF INSURANCE, which are designed and intended for business purposes or designed, intended, or used for occupancy by five or more families.

COMMERCIAL PROPERTY includes additions, extensions, fixtures, machinery and other equipment attached to the building(s) for the support or service of that building(s). COMMERCIAL PROPERTY does not include:
1. Land, including the land on which the COMMERCIAL PROPERTY is located;
2. business inventory or supplies;
3. business materials;
4. records of any nature;
5. animals;
6. vehicles of any kind or use;
7. outdoor signs, whether or not attached to the building or structure;
8. trees; shrubs; plants;
9. outdoor swimming pools;
10. fences;
11. piers; wharves; docks;
12. beach or diving platforms or appurtenances;
13. retaining walls not constituting a part of the building;
14. walks; roadways and other paved surfaces;
15. foundations of buildings, machinery, boilers or engines that are below the surface of the ground or the undersurface of the lowest basement floor;
16. underground pilings, piers, pipes, flues and drains;

"DECLARATIONS PAGE" means page one of this Master Policy, which identifies, YOU, US and the effective date and time of coverage.

"DESCRIBED LOCATION" means the location named on an individual EVIDENCE OF INSURANCE issued under this Master Policy.

"EVIDENCE OF INSURANCE" refers to the form issued by US to the BORROWER as evidence of insurance purchased by YOU. An EVIDENCE OF INSURANCE form specifies the location, identity, and the amount and term of coverage for an individual RESIDENTIAL PROPERTY or COMMERCIAL PROPERTY that has been insured by US at YOUR request. The terms and conditions applying to the insurance referenced in an EVIDENCE OF INSURANCE may vary depending upon the forms approved by any individual state where the PROPERTY is located.

"LOSS" means direct, sudden and accidental physical damage to or theft of all or part of a covered PROPERTY.

01A09-MFMP0001-E1103

(PM7\MF1F\01A09MFMP0001E1103)                                                                                                STK# 00 0000

"PROPERTY" means either RESIDENTIAL PROPERTY as defined in the Residential Property Fire Insurance Form or COMMERCIAL PROPERTY as defined in the Commercial Property Fire Insurance Form, which is insured under the terms of this Master Policy.

"RESIDENTIAL PROPERTY" means the one to four-unit structure identified as the DESCRIBED LOCATION in the EVIDENCE OF INSURANCE, which is designed, intended, and used principally for dwelling purposes and structures attached to the dwelling. Land, including the land on which the RESIDENTIAL PROPERTY is located, is not covered property.

## COVERAGE

Coverage is provided for direct and accidental physical damage to, or loss of, insured PROPERTY subject to the terms, coverage, exclusions and conditions of the specific fire insurance form issued to cover that PROPERTY. No coverage is provided for contents, personal effects, additional living expense, fair rental value, land, liability for property damage, or liability for bodily injury, illness or death of anyone.

## PREMIUM

The premium charged will be computed in compliance with the rates used by the Company on the effective date of the subject EVIDENCE OF INSURANCE.

## SPECIAL PROVISIONS

**1. COVERAGE LIMITATION**
Coverage under this Master Policy is limited to only those mortgages on any PROPERTY in which YOU have an insurable interest and which is reported to US no later than 60 days after the effective date of coverage on the individual PROPERTY.

**2. LIMITS OF RECOVERY**
The maximum amount of coverage applicable to a risk insured hereunder shall be the amount of insurance purchased by YOU, as stated on the EVIDENCE OF INSURANCE, less the applicable deductible. OUR settlement options will be specified in the fire insurance form applying to the RESIDENTIAL PROPERTY or COMMERCIAL PROPERTY.

**3. OTHER INSURANCE**
Coverage under this Master Policy is provided for a specific PROPERTY at YOUR request, based upon YOUR belief that no other insurance acceptable to YOU is in force covering YOUR interest in the subject PROPERTY. If it is determined that other insurance acceptable to YOU is in force, WE will cancel the insurance on the PROPERTY referenced in the EVIDENCE OF INSURANCE on the effective date of the other insurance or the effective date shown on the EVIDENCE OF INSURANCE, whichever is the more current date, even if the other insurance is discovered after the date of loss.

WE will make no payment for any loss that is covered by other insurance acceptable to YOU. In no event shall this insurance apply on a pro-rata or contributing basis.

**4. TERMINATION**
YOU may cancel this Master Policy at any time by giving written notice to US stating when, thereafter, such cancellation shall be effective. WE may cancel this Master Policy by mailing a notice of cancellation to YOU at YOUR last address known to US at least thirty (30) days in advance of the date of cancellation . This Master Policy shall cease at 12:01 A.M. (standard time) at YOUR address shown on the DECLARATIONS PAGE on the date of cancellation specified in the notice.

If this Policy is cancelled, all in-force insurance on PROPERTY for which an EVIDENCE OF INSURANCE has been issued shall be cancelled concurrently unless the notice of cancellation states that the insurance referenced on the EVIDENCE OF INSURANCE will remain in effect. If the Company gives notice that any such coverage on specific PROPERTY will remain in effect after cancellation of the Policy, the coverage on the specific PROPERTY will then remain in force until the expiration date of such insurance or until the insurance on the specific PROPERTY has been

(PM7\MF1F\01A09MFMP0001E1103)                                                          STK# 00 0000

cancelled in compliance with the cancellation provisions applying to the specific PROPERTY, except that the Company reserves the right to cancel insurance referenced in any or all EVIDENCES OF INSURANCE upon at least ten (10) days' written notice if such cancellation is for non-payment of premium, or at least thirty (30) days' written notice if cancellation is for any reason other than non-payment of premium.

5.  **INSPECTION AND AUDIT**
    WE shall be permitted, at all reasonable times, to inspect the insured PROPERTY and to examine YOUR books and records insofar as those records pertain to any payments made because of any LOSS.  This includes, but is not limited to, the right to review YOUR records for information about other insurance provided by the BORROWER and the net loan balance both at the time the insurance referenced on the EVIDENCE OF INSURANCE is effective and at the date of LOSS. This right shall remain in force until all insurance referenced on the EVIDENCES OF INSURANCE issued under this Master Policy have been cancelled or expired and for 12 (twelve) months thereafter.  This right shall remain in force for 12 (twelve) months after each LOSS has been fully closed by payment or otherwise.

IN WITNESS WHEREOF, __Balboa_____ Insurance Company has caused this Master Policy to be signed by its President and Secretary, at Irvine, California and countersigned on the DECLARATIONS PAGE by OUR authorized representative.

SECRETARY                                                           PRESIDENT

01A09-MFMP0001-E1103

(PM7\MF1F\01A09MFPO0001E1103)                                                                    STK# 00 0000

## Residential Property Fire Insurance Form

## Lenders Protection Program

### INSURING AGREEMENT

In consideration of the premium paid, and subject to the limits of liability, exclusions, conditions and other terms contained in the Master Policy and this Residential Property Fire Insurance Form ("Residential Property Form"), we agree to indemnify YOU for a LOSS, to the extent of YOUR insurable interest in such LOSS. The BORROWER is an additional insured with respect to any residual amounts of insurance over and above YOUR insurable interest in the RESIDENTIAL PROPERTY.

### DEFINITIONS

Whenever used in this Form, the following words shall have the meanings as shown herein:

"YOU," "YOUR," and "YOURS" means the Named Insured shown under Item 1 on the DECLARATIONS PAGE of the Master Policy, under which the insurance on the DESCRIBED LOCATION has been issued, which has an interest in the RESIDENTIAL PROPERTY described in the EVIDENCE OF INSURANCE as the direct result of a mortgage, second mortgage, other lien instrument, or an agreement for the servicing of such contracts.

"WE," "US," "OUR," and "OURS" means the Company that underwrites this insurance.

"ACTUAL CASH VALUE" means the amount it would take to repair or replace the damaged property on the DATE OF LOSS with material of like kind and quality, subject to deduction for deterioration, depreciation or obsolescence, and contractor's overhead and profit. ACTUAL CASH VALUE applies to valuation of property whether the property has sustained partial or total loss.

"BORROWER" means the person(s) or entity identified as the BORROWER on the EVIDENCE OF INSURANCE.

"DATE OF LOSS" means the date on which a LOSS occurred.

"DECLARATIONS PAGE" means the DECLARATIONS PAGE of the Master Policy, which identifies the Named Insured and the policy period applying to the Master Policy.

"DESCRIBED LOCATION" means the location identified as the DESCRIBED LOCATION on the EVIDENCE OF INSURANCE.

"EVIDENCE OF INSURANCE" refers to the form issued by US to the BORROWER as evidence of insurance purchased by YOU. An EVIDENCE OF INSURANCE form specifies the location, identity, and the amount and term of coverage for the individual RESIDENTIAL PROPERTY that has been insured by US at YOUR request. The terms and conditions applying to the insurance referenced in the EVIDENCE OF INSURANCE may vary depending upon the forms approved by any individual state where the RESIDENTIAL PROPERTY is located.

"FUNGI" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

"LOSS" means direct, sudden and accidental physical damage to the RESIDENTIAL PROPERTY or OTHER STRUCTURES caused by an insured peril, or the theft of all or part of the covered RESIDENTIAL PROPERTY or OTHER STRUCTURES.

"OTHER STRUCTURES" means structures on the DESCRIBED LOCATION, which are separated from the dwelling structure by clear space or connected to the dwelling structure by only a fence, utility line or similar connection. OTHER STRUCTURES do not include structures that are used or partially used for commercial, farming, or manufacturing purposes, or are rented or held for rental to any person not a tenant of the dwelling structure, unless used solely as a private garage. Land, including the land on which OTHER STRUCTURES are located, is not covered property.

(PM7\MF1F\01A09MFPO0001E1103)                                                    STK# 00 0000

"RESIDENTIAL PROPERTY" means the one to four-unit dwelling structure located at the DESCRIBED LOCATION, which is designed, intended, and used principally for dwelling purposes, and structures attached to the dwelling structure. Land, including the land on which the RESIDENTIAL PROPERTY is located, is not covered property.

"VOLCANIC EVENT" means loss caused by the blast or airborne shock waves, ash, dust, or flow of lava from the eruption of a volcano.

## OTHER COVERAGES

1. **Other Structures.** The policy provides coverage for OTHER STRUCTURES at the DESCRIBED LOCATION up to an amount equal to 10% of the RESIDENTIAL PROPERTY Limit of Liability shown on the EVIDENCE OF INSURANCE. This additional amount will not reduce the Limit of Liability on any other covered property.

2. **Debris Removal.** WE will pay YOUR reasonable expenses incurred for the removal of debris due to a LOSS covered by the Residential Property Form. This expense is included in the Limit of Liability that applies to the damaged property.

3. **Emergency Repairs.** In the event of a LOSS, WE will pay the reasonable cost incurred by the BORROWER or YOU for necessary repairs that are made solely to protect the RESIDENTIAL PROPERTY or OTHER STRUCTURES from further LOSS. This expense is included in the Limit of Liability that applies to the damaged property.

4. **Collapse.** WE will pay for LOSS to the RESIDENTIAL PROPERTY that results from the collapse of a building or any part of a building only if the collapse is caused by one or more of the following:
   a. hidden decay;
   b. hidden insect or vermin damage;
   c. weight of contents, equipment, animals or people;
   d. weight of rain that collects on a roof;
   e. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

   Damage to an awning, fence, patio, pavement, underground pipe, swimming pool, flue, cesspool, septic tank, drain, foundation, retaining wall, bulkhead, pier, dock or wharf is not covered under this coverage unless the damage is a direct result of the collapse of a structure. This coverage does not include settling, cracking, shrinking, bulging or expansion.

   This coverage does not increase the Limit of Liability shown on the EVIDENCE OF INSURANCE.

## INSURED PERILS AND GENERAL EXCLUSIONS

We insure YOU for LOSS. However, WE do not insure YOU for damage caused directly or indirectly by, or resulting from, any of the following perils. Such damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the damage:

a. Wear and tear, marring, deterioration, inherent vice, latent defect, freezing, rust, corrosion, neglect before or after a LOSS, mechanical or structural breakdown or failure, abusive use, or defective, faulty, or inadequate maintenance, design, construction, remodeling, planning, zoning, surveying or siting of the RESIDENTIAL PROPERTY or OTHER STRUCTURES (incomplete remodeling is considered defective, faulty or inadequate remodeling); If the ensuing loss is a sudden and accidental escape of water from a plumbing, heating or air conditioning system or household appliance, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance from which this water escaped. We do not cover loss to the system or appliance from which this water escaped.

b. Contamination, pollution, smog, smoke or vapors from agricultural or industrial operations;

01A09-MFPO0001-E1103                                    2

(PM7\MF1F\01A09MFPO0001E1103)                                                                STK# 00 0000

c.  Flood, meaning a general, temporary condition of complete or partial covering or inundation of normally dry land areas from:
   (1)  The overflow of tidal or inland water including streams, rivers or lakes; or
   (2)  The run-off or build-up of surface water from any source; or
   (3)  Mudslides or mudflows caused by the build-up of water on or under the ground; or
   (4)  The sinking, collapse or movement of land along the shore of a body of water, which results from undermining or erosion caused by waves, flow, or currents of water exceeding normal levels.
   Ensuing LOSS by fire or explosion will be covered;

d.  Water that backs up through or overflows from sewers, drains or sumps, however caused;

e.  Water below the surface of the ground or damage from the pressure exerted by such water, including its flow, seepage or leakage through foundations, walls, floors, basements, doors, windows, sidewalks, driveways, or any other opening;

f.  Earth movement caused by, resulting from, contributed to or aggravated by earthquake; landslide; the elevation, sinking, or shifting of land or soil, except a VOLCANIC EVENT, or unless direct damage by a fire or explosion ensues, in which case WE will pay only for the ensuing fire or explosion LOSS;

g.  War, whether declared or not, insurrection, revolution, civil war, rebellion, warlike act by a military force or the personnel of any military force, seizure, destruction or use for a military purpose including any consequence of any of these. The detonation or discharge of any nuclear weapon shall be deemed an act of war even if done accidentally;

h.  Nuclear reaction, radiation or radioactive contamination, or any consequence of any of these and LOSS caused by these shall not be considered LOSS by fire, explosion, or smoke, whether those perils be covered or not by the Residential Property Form.

i.  Collapse, settling, shrinking, cracking, expansion or bulging of pavements, foundations, floors, walls, ceilings, patios, walkways or driveways, except as may be provided under the "Other Coverage" portion of the Residential Property Form;

j.  Freezing of any heating, plumbing, or air conditioning system or any household appliance, or by the leakage, overflow or discharge from within the system or appliance caused by freezing during any period while the RESIDENTIAL PROPERTY or OTHER STRUCTURE is vacant, unoccupied or under construction unless YOU or the BORROWER have:
   1.  maintained heat in the building, or
   2.  turned off the water supply and drained water from the system and appliances;

k.  Freezing, thawing, or the pressure or weight of water, ice or snow, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall bulkhead, pier, wharf or dock;

l.  Repeated seepage or leakage of water or steam over a period of time from a plumbing, heating or air conditioning system or any household appliance;

m.  Theft of any property not attached to or part of the RESIDENTIAL PROPERTY or OTHER STRUCTURE or theft of any part of the RESIDENTIAL PROPERTY or OTHER STRUCTURE while undergoing construction, remodeling or repair;

n.  Hail, ice, snow, sleet or wind to any outdoor antennas, dishes and aerials including their lead-in wiring, supports, towers and masts;

o.  Birds, insects, rodents, reptiles, animals, fish;

p.  FUNGI, wet or dry rot, viruses, bacteria, or pathogenic organisms, including spores, scents or by-products produced or released by any of these;

q.  Acts or decisions of any person, group, governmental body or organization, including the failure to act or decide;

01A09-MFPO0001-E1103                                3

(PM7\MF1F\01A09MFPO0001E1103)                                                                    STK# 00 0000

r.  Power outage.  Power outage means the interruption of power or other utility service if the interruption takes place away from the RESIDENTIAL PROPERTY.  If an ensuing loss to the RESIDENTIAL PROPERTY results from the power outage, we will pay for such ensuing loss if it is not otherwise excluded by this policy.

s.  Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or OTHER STRUCTURE, except as provided for under the Residential Property Form.

t.  Under paragraphs a, i, j, k, l, m, n and o, any ensuing loss caused by any of these if not otherwise excluded in this policy, is covered.

## CONDITIONS

The following conditions apply to this Residential Property Form:

1.  Period of Coverage.  The Residential Property Form applies only to LOSS that occurs during the coverage period shown on the EVIDENCE OF INSURANCE.

2.  Limit of Liability.  No matter how many people or entities have an insurable interest in the RESIDENTIAL PROPERTY or OTHER STRUCTURES, WE shall not be liable for an amount greater than the interest of YOU and the BORROWER or for the amount of coverage requested by YOU, as shown on the EVIDENCE OF INSURANCE, less the applicable deductible.

    OUR liability shall not exceed the least of the following, less the applicable deductible stated in the EVIDENCE OF INSURANCE:
    a.  The Limit of Liability that applies to the damaged structure as shown in the EVIDENCE OF INSURANCE;
    b.  The cost to replace or repair the damaged or destroyed structure with material of like kind and quality, without deduction for depreciation, payable after replacement or repair is completed within a reasonable amount of time after the LOSS.

3.  Fraud or Concealment.  WE will not provide coverage if YOU have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.  WE will not provide coverage to the BORROWER for his/her interest in the property if the BORROWER has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

4.  YOUR duties after LOSS.  When a LOSS has occurred to which the Residential Property Form may apply, YOU and the BORROWER shall see that the following duties are performed:

    a.  give US or OUR agent immediate notice of the LOSS;
    b.  protect the property from further damage, make reasonable and necessary repairs required to protect the property, and keep an accurate record of the cost of such repairs;
    c.  exhibit the damaged property to US or OUR representatives as often as WE reasonably require and submit to examination(s) under oath;
    d.  submit to US, within 60 days after WE  request, YOUR signed, sworn proof  of loss, which sets forth, to the best of YOUR knowledge and belief:
    (1)  the time and cause of LOSS;
    (2)  YOUR interest and the interest of all others in the property and all encumbrances existing thereon;
    (3)  the details of any other insurance which may cover the LOSS;
    (4)  any  changes in the title or occupancy of the property during the term referenced on the EVIDENCE OF INSURANCE;
    (5)  specifications of the damaged property and detailed estimates for repair of the damage;

5.  Loss Settlement.  A LOSS will be settled as follows:

    a.  OTHER STRUCTURES, at ACTUAL CASH VALUE at the time of LOSS, but not exceeding the amount necessary to repair or replace;
    b.  Installed carpeting, covered domestic equipment or appliances, awnings, outdoor antennas and outdoor equipment, whether or not attached to a structure, at ACTUAL CASH VALUE at the time of LOSS but not exceeding the amount necessary to repair or replace;

(PM7\MF1F\01A09MFPO0001E1103)                                                                STK# 00 0000

    c.  The one to four-unit dwelling structure included in the RESIDENTIAL PROPERTY, at replacement cost without deduction for depreciation if repair or replacement has been completed within a reasonable time after LOSS; at ACTUAL CASH VALUE until such repair or replacement is completed.

6.  Pair or Set.  In settlement of covered damage to a pair or set, WE may elect to:
    a.  Replace or repair any part of the pair or set;
    b.  Pay the difference between the ACTUAL CASH VALUE of the pair or set before and after the loss.

7.  Replacement of Glass.  WE will pay to replace glass with safety glazing materials when required by ordinance or law.

8.  Appraisal.  If YOU and WE fail to agree on the amount of LOSS, either can make a written demand upon the other that the amount of LOSS be determined by appraisal.  Within 20 days of such written demand, each party shall select a competent and disinterested appraiser and notify the other of the appraiser selected.  The two appraisers shall then select a competent and impartial umpire.  If the appraisers do not agree on an umpire within 15 days, then, at the request of YOU or US, such umpire shall be selected by a judge of a court of record in the state where the RESIDENTIAL PROPERTY is located.  The appraisers shall then appraise the LOSS.  If the appraisers submit a written proof of agreement to US, the amount agreed upon shall prevail.  If the appraisers fail to agree, they shall submit their differences to the umpire within a reasonable time.  Written agreement signed by any two of these three shall be the amount used to settle the dispute.  The appraisal award shall be considered binding as to the amount of the LOSS.  WE shall pay all the expenses of OUR chosen appraiser, and YOU shall pay all the expenses of YOUR chosen appraiser.  Each party shall also pay for its own voluntarily-incurred expenses including, but limited to, attorney fees or expert witness fees.  Any other expenses of the appraisal and the compensation of the umpire shall be paid equally by YOU and US.

9.  Other Insurance.  YOU and WE agree that the insurance provided under the Residential Property Form has been requested by YOU because YOU believe that no other coverage acceptable to YOU is in force to protect YOUR interest in the RESIDENTIAL PROPERTY.

    Insurance under the Residential Property Form will automatically terminate on the effective date and time of any other policy or certificate of insurance acceptable to YOU.  WE shall not make any payment for any claim or LOSS if other insurance acceptable to YOU is in force on the DATE OF LOSS.

10.  Subrogation.  WE shall be subrogated to any rights YOU have to recovery against any person(s).  However, WE shall not exercise this right against the BORROWER.  WE may require an assignment of rights of recovery from YOU to the extent that payment is made by US.  If an assignment is sought, YOU and the BORROWER shall sign and deliver all related papers, and shall otherwise cooperate with US and do nothing to impair OUR subrogation rights.

11.  Suit against US.  No action may be brought unless there has been compliance with the provisions of the Residential Property Form, and the action is started within one year after the DATE OF LOSS.

12.  Repair or Replacement Option.  WE may repair or replace any part of the damaged property with equivalent property if WE have given YOU or mailed to YOU at YOUR last known address, written notice of OUR intention to do so within 30 days after WE receive YOUR signed, sworn proof of loss.

13.  Loss Payment.  WE will adjust each LOSS with YOU and will pay YOU.  If the amount of LOSS exceeds YOUR insurable interest, WE will pay the BORROWER any residual amount due for the LOSS, not exceeding the applicable Limit of Liability indicated on the EVIDENCE OF INSURANCE.  Payment for LOSS will be made within 30 days after WE reach agreement with YOU as to the amount of the LOSS, or failing that, the entry of a final judgment or the filing of an appraisal award with US.

14.  Abandonment.  WE may take all, part, or none of the property for which WE have paid YOU or the BORROWER but neither YOU nor the BORROWER can abandon any property to US without our prior written approval.

15.  No Benefit to Bailee.  WE will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of the Residential Property Form.

(PM7\MF1F\01A09MFPO0001E1103)                                                                STK# 00 0000

16. Cancellation:

    a.  YOU may cancel the insurance provided under the Residential Property Form at any time by giving written notice to US and the BORROWER stating when, thereafter, such cancellation is to take effect.

    b.  The BORROWER may cancel the insurance provided under the Residential Property Form by providing proof of other insurance to YOU that is acceptable to YOU and which covers YOUR interest in the RESIDENTIAL PROPERTY and OTHER STRUCTURES. In such case, the effective date of cancellation will be the effective date of the insurance obtained by the BORROWER or the effective date of the insurance provided under the Residential Property Form, whichever is later.

    c.  WE may cancel the insurance provided under the Residential Property Form if YOU have not paid the premium and WE have given you 10 days' written notice at YOUR last address known to US. We may also cancel the insurance provided under the Residential Property Form if we discover that other insurance acceptable to YOU is in effect to protect YOUR interest in the RESIDENTIAL PROPERTY and OTHER STRUCTURES, even if such other insurance is discovered after a LOSS.

    d.  The completion of foreclosure proceedings on RESIDENTIAL PROPERTY by YOU shall terminate the insurance provided under the Residential Property Form, and notice of foreclosure by YOU to US will be YOUR request for cancellation. Cancellation will be effective on the date the RESIDENTIAL PROPERTY is conveyed to YOU or to a third party via the foreclosure process.

In the event of cancellation of the insurance provided under the Residential Property Form, any refund due will be computed on a pro-rata basis.

17. Expiration of Insurance. The Residential Property Form is written under the terms of the Master Policy that has been issued to YOU. If the Master Policy is in force upon expiration of the insurance provided under the Residential Property Form, YOU may request that new insurance under the Residential Property Form be issued to cover the RESIDENTIAL PROPERTY and OTHER STRUCTURES. If YOU fail to request the issuance of new insurance under the Residential Property Form, insurance on the RESIDENTIAL PROPERTY and OTHER STRUCTURES will cease upon the expiration date of the Residential Property Form, as shown on the EVIDENCE OF INSURANCE.

If, upon expiration of the Residential Property Form, the MASTER POLICY is no longer in force, then all insurance under the Residential Property Form will end on its expiration date.

18. Changes of Provisions. No change may be made to any provision of the Residential Property Form except by written endorsement issued by US. No other written changes or oral changes will be valid. OUR request for appraisal or examination(s) under oath shall not waive any of our rights.

19. Assignment. There shall be no valid assignment of YOUR rights or the rights of the BORROWER under the Residential Property Form unless WE have given OUR advance written consent to YOU and the BORROWER.

IN WITNESS WHEREOF, Balboa Insurance Company has caused the Residential Property Form to be signed by its President and Secretary, at Irvine, California.

                SECRETARY                        PRESIDENT

01A09-MFPO0001-E1103                                        6

(PM7\MF1F\01A09MFPO0002E1103)    STK# 00 0000

## Commercial Property Fire Insurance Form

### Lenders Protection Program

#### INSURING AGREEMENT

In consideration of the premium paid, and subject to the Limits of Liability, exclusions, conditions and other terms contained in the Master Policy and this Commercial Property Fire Insurance Form ("Commercial Property Form"), we agree to indemnify YOU for a LOSS, to the extent of YOUR insurable interest in such LOSS. The BORROWER is an additional insured with respect to any residual amounts of insurance over and above YOUR insurable interest in the COMMERCIAL PROPERTY.

#### DEFINITIONS

Whenever used in this Commercial Property Form, the following words shall have the meanings as shown herein:

"YOU," "YOUR," and "YOURS" means the Named Insured shown under Item 1 on the DECLARATIONS PAGE of the Master Policy under which the insurance on the DESCRIBED LOCATION has been issued, which has an interest in the COMMERCIAL PROPERTY described on the EVIDENCE OF INSURANCE as the direct result of a mortgage, second mortgage, other lien instrument, or an agreement for the servicing of such contracts.

"WE," "US," "OUR," and "OURS" means the Company that underwrites this insurance.

"ACTUAL CASH VALUE" means the amount it would take to repair or replace the damaged property on the DATE OF LOSS with material of like kind and quality, subject to deduction for deterioration, depreciation or obsolescence, and contractor's overhead and profit.  ACTUAL CASH VALUE applies to valuation of property whether the property has sustained partial or total LOSS.

"BORROWER" means the person(s) or entity identified as the BORROWER in the EVIDENCE OF INSURANCE.

"CERTIFIED ACT OF TERRORISM" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States to be an act of terrorism pursuant to the Terrorism Risk Insurance Act of 2002.

"COMMERCIAL PROPERTY" means the buildings designed and intended for business purposes and buildings designed, intended, or used for occupancy by five or more families, which are located on the DESCRIBED LOCATION.

COMMERCIAL PROPERTY includes additions, extensions, fixtures, machinery and other equipment attached to the building(s) for the support or service of that building(s).  COMMERCIAL PROPERTY does not include:
1. Land, including the land on which the COMMERCIAL PROPERTY is located;
2. business inventory or supplies;
3. business materials;
4. records of any nature;
5. animals;
6. vehicles of any kind or use;
7. outdoor signs, whether or not attached to the building or structure;
8. trees; shrubs; plants;
9. outdoor swimming pools;
10. fences;
11. piers; wharves; docks;
12. beach or diving platforms or appurtenances;
13. retaining walls not constituting a part of the building;
14. walks; roadways and other paved surfaces;
15. foundations of buildings, machinery, boilers or engines  that are below the surface of the ground or the undersurface of the lowest basement floor;
16.  underground pilings, piers, pipes, flues and drains;

 that may be located at the DESCRIBED LOCATION.

(PM7\MF1F\01A09MFPO0002E1103)                                                    STK# 00 0000

"DATE OF LOSS" means the date on which a LOSS occurred.

"DECLARATIONS PAGE" means the DECLARATIONS PAGE of the Master Policy, which identifies the Named Insured and the policy period applying to the Master Policy

"DESCRIBED LOCATION" means the location identified as the DESCRIBED LOCATION on the EVIDENCE OF INSURANCE.

"EVIDENCE OF INSURANCE" refers to the form issued by US to the BORROWER as evidence of insurance purchased by YOU. An EVIDENCE OF INSURANCE form specifies the location, identity, and the amount and term of coverage for the individual COMMERCIAL PROPERTY that has been insured by US at YOUR request.  The terms and conditions applying to the insurance referenced in the EVIDENCE OF INSURANCE may vary depending upon the forms approved by any individual state where the COMMERCIAL PROPERTY is located.

"FUNGI" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

"LOSS" means direct, sudden and accidental physical damage to the COMMERCIAL PROPERTY caused by a covered peril.

"NON-CERTIFIED ACT OF TERRORISM" means a violent act or an act that:
1.  is dangerous to human life, property or infrastructure, that is committed by an individual or individuals; and
2.  appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion; and
3.  is not a CERTIFIED ACT OF TERRORISM, except that an act of terrorism that is not deemed a CERTIFIED ACT OF TERRORISM by the Secretary of the Treasury solely because property and casualty insurance losses resulting from such act of terrorism, in the aggregate, do not exceed $5,000,000, shall not be deemed a NON-CERTIFIED ACT OF TERRORISM.

### COVERED PERILS

The Commercial Property Form insures against LOSS caused by:

1.  Fire or lightning,
2.  Windstorm or Hail, except LOSS caused by frost or freezing, ice, snow or sleet, whether or not driven by wind.  We shall not be liable under this peril for damage to the interior of the COMMERCIAL PROPERTY caused by:
    a.  Rain, snow, sand or dust, whether or not driven by wind unless the COMMERCIAL PROPERTY sustains actual damage to roof or walls by the direct action of wind or hail, and then, WE shall only be liable for the damage to the interior of the COMMERCIAL PROPERTY caused by rain, snow, sand or dust entering through the openings in the roof or walls caused by their direct damage.
    WE will not be liable for windstorm or hail damage to:
    a.  Windmills, wind-driven pumps or their towers;
    b.  Crop silos or their contents;
    c.  Metal smokestacks;
    d.  Awnings or canopies of fabric or slat construction or their supports;
    e.  Radio or television antennas, their lead-in wiring, masts or towers.
3.  Smoke, other than smoke from agricultural smudging or industrial operations.
4.  Explosion, which includes explosion of accumulated gases or unconsumed fuel within any fired vessel or flues or passages designed to provide for the venting of gases from such combustion.  WE shall not be liable for damage caused by the explosion of steam boilers, steam turbines, steam engines, or steam pipes owned, leased or operated under the control of YOU or the BORROWER.
    WE shall not be liable under this peril for damage caused by:
    a.  Sonic boom;
    b.  Arcing or sparking of electricity;
    c.  Mechanical breakdown, rupture or bursting of moving parts of machinery;
    d.  Bursting, breaking, rupture or deterioration of water pipes or the contents of any building caused by or resulting from water or the pressure of water;
    e.  The failure or operation of any pressure relief devices.

01A09-MFPO0002-E1103                                        2

5.  Riots, including acts of striking employees of the tenant(s) or owner of the COMMERCIAL PROPERTY, but WE shall not be responsible for damage due to change in temperature or humidity caused by this peril.

6.  Collision, meaning LOSS resulting from the collision of an aircraft or vehicle not owned or operated by YOU, the BORROWER or a tenant with the COMMERCIAL PROPERTY. This peril includes damage from objects falling from such aircraft.

7.  Vandalism or Malicious Mischief, meaning willful and malicious damage to or destruction of the COMMERCIAL PROPERTY. However, WE will not cover such damage to glass except to glass building blocks.

    Vandalism and malicious mischief do not include, and WE are not liable for, LOSS caused by theft, pilferage, burglary, or larceny.

## EXCLUSIONS

WE do not insure YOU for damage caused directly or indirectly by, or resulting from, any of the following perils. Such damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the damage:

1.  NON-CERTIFIED ACT OF TERRORISM. We will not pay for loss or damage caused directly or indirectly by, contributed to by, resulting from, arising out of, or in connection with any NON-CERTIFIED ACT OF TERRORISM, regardless of any other cause or event contributing concurrently with or in any other sequence to the loss or damage. This exclusion shall apply when:

    (1) the NON-CERTIFIED ACT OF TERRORISM involves the use, release, dispersal, escape or application of any nuclear material, contaminant or pollutant, or that directly or indirectly results in any nuclear reaction, nuclear discharge, nuclear radiation, nuclear or radioactive pollution, or nuclear or radioactive contamination; or

    (2) the NON-CERTIFIED ACT OF TERRORISM is carried out by means of the use, release, dispersal, escape or application of any pathogenic or poisonous biological material, contaminant or pollutant; or

    (3) the NON-CERTIFIED ACT OF TERRORISM is carried out by means of the use, release, dispersal, escape or application of any pathogenic or poisonous chemical material, contaminant or pollutant; or

    (4) the amount of loss and damage to all property, including loss of use and business interruption losses in the United States, attributable to one or more NON-CERTIFIED ACT OF TERRORISM, which occur within a 72-hour period, exceeds $25,000,000, in the aggregate.

    Ensuing loss or damage by fire will be covered. This Exclusion does not create coverage for any loss which would otherwise be excluded under this policy, nor does it supercede any other exclusion, including, but not limited to, Exclusion 3 "Nuclear Explosion" and Exclusion 5 "War."

2.  Electrical Equipment. WE will not pay for any damage to appliances, devices, fixtures or wiring resulting from electrical currents that are artificially generated. WE will pay for ensuing fire damage but only for that portion that is caused directly by fire.

3.  Nuclear Explosion. WE will not pay for damage caused by nuclear reaction,    nuclear explosion, nuclear radiation, or radioactive contamination.

4.  Ordinance or Law: WE will not pay for damage or debris removal expense, caused directly or indirectly by the enforcement of any ordinance or law regulating the use, construction, demolition or repair of the COMMERCIAL PROPERTY.

5.  War: WE will not pay for damage caused by or resulting from war whether declared or not, insurrection, revolution, civil war, rebellion, warlike act by a military force or the personnel of any military force, seizure, destruction or use for a military purpose including any consequence of any of these. WE will not pay for damage caused by the action of any governmental authority to resist, defend against or combat any of the above actions or acts. The detonation or discharge of any nuclear weapon shall be deemed an act of war even if done accidentally.

(PM7\MF1F\01A09MFPO0002E1103)                                                    STK# 00 0000

6.  Flood, meaning a general, temporary condition of complete or partial covering or inundation of normally dry land areas from:
    (1)  The overflow of tidal or inland water including streams, rivers or lakes; or
    (2)  The run-off or build-up of surface water from any source; or
    (3)  Mudslides or mudflows caused by the build up of water on or under the ground; or
    (4)  The sinking, collapse or movement of land along the shore of a body of water which results from undermining or erosion caused by waves, flow, or currents of water exceeding normal levels.

    Ensuing LOSS by fire or explosion will be covered;

7.  Water that backs up through or overflows from sewers, drains, or sumps, however caused;

8.  Water below the surface of the ground or damage from the pressure exerted by such water, including its flow, seepage or leakage through foundations, walls, floors, basements, doors, windows, sidewalks, driveways, or any other opening;

9.  FUNGI, wet or dry rot, viruses, bacteria, or pathogenic organisms, including spores, scents or by-products produced or released by any of these;

10. Earth movement: WE will not pay for damage caused by, resulting from, contributed to or aggravated by earth movement including, but not limited to, earthquake, landslide, mudslide, mudflow, the sinking, collapse or shifting of land or soil unless direct damage by fire or explosion ensues, in which case WE will pay only for the ensuing fire or explosion LOSS.

11. Volcanic Event: WE will not pay for damage caused by the eruption, explosion or effusion of a volcano unless direct loss by fire or breakage of glass or safety glazing material ensues, in which case, WE will pay only for the ensuing fire damage and breakage of glass or glazing material.

## CONDITIONS

The following conditions apply to the CERTIFICATE and the Commercial Property Form:

1.  Period of Coverage. The Commercial Property Form provides coverage only for LOSS that occurs during the coverage period shown on the EVIDENCE OF INSURANCE.

2.  Limit of Liability. No matter how many people or entities have an insurable interest in the COMMERCIAL PROPERTY, WE shall not be liable for an amount greater than the interest of YOU and the BORROWER or for the maximum amount of insurance requested by YOU, as shown on the EVIDENCE OF INSURANCE, less the applicable deductible.

    OUR liability shall not exceed the least of the following, less the applicable deductible stated on the EVIDENCE OF INSURANCE:
    a.  The Limit of Liability shown on the EVIDENCE OF INSURANCE;
    b.  The cost to replace or repair the damaged or destroyed COMMERCIAL PROPERTY with material of like kind and quality, without deduction for depreciation, payable after replacement or repair is completed within a reasonable amount of time after the LOSS.

3.  Fraud or Concealment. WE will not provide coverage if YOU have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance. WE will not provide coverage to the BORROWER for his interest in the COMMERCIAL PROPERTY if the BORROWER has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

4.  YOUR duties after LOSS. When a LOSS has occurred to which this Commercial Property Form may apply, YOU or the BORROWER shall see that the following duties are performed:

    a.  Give US or OUR agent immediate notice of the LOSS;
    b.  Protect the COMMERCIAL PROPERTY from further damage, make reasonable and necessary repairs required to protect the COMMERCIAL PROPERTY, and keep an accurate record of the cost of such repairs;

01A09-MFPO0002-E1103                                        4

(PM7\MF1F\01A09MFPO0002E1103)                                                STK# 00 0000

   c.  Exhibit the damaged COMMERCIAL PROPERTY to US or our representatives as often as WE reasonably require and submit to examination(s) under oath;

   d.  Submit to US, within 60 days after OUR request, YOUR signed, sworn proof of loss, which sets forth, to the best of YOUR knowledge and belief:

     (1)  the date, time and cause of LOSS;

     (2)  YOUR interest and the interest of all others in the COMMERCIAL PROPERTY and all encumbrances existing thereon;

     (3)  the details of any other insurance that may cover the loss;

     (4)  any changes in the title or occupancy of the property during the term stated on the EVIDENCE OF INSURANCE;

     (5)  specifications of the damaged COMMERCIAL PROPERTY and detailed estimates for repair of the damage.

5.  Pair or Set. In settlement of covered damage to a pair or set, WE may elect to:

   a.  Replace or repair any part of the pair or set;

   b.  Pay the difference between the ACTUAL CASH VALUE of the pair or set before and after the LOSS.

6.  Appraisal. If YOU and WE fail to agree on the amount of LOSS, either can make a written demand upon the other that the amount of LOSS be determined by appraisal. Within 20 days of such written demand, each party shall select a competent and disinterested appraiser and notify the other of the appraiser selected. The two appraisers shall then select a competent and impartial umpire. If the appraisers do not agree on an umpire within 15 days, then, on the request of YOU or US, such umpire shall be selected by a judge of a court of record in the state where the COMMERCIAL PROPERTY is located. The appraisers shall then appraise the LOSS. If the appraisers submit a written proof of agreement to US, the amount agreed upon shall prevail. If the appraisers fail to agree, they shall submit their differences to the umpire within a reasonable time. Written agreement signed by any two of these three shall be the amount used to settle the dispute. The appraisal award shall be considered binding as to the amount of the LOSS. WE shall pay all the expenses of OUR chosen appraiser, and YOU shall pay all of the expenses of YOUR chosen appraiser. Each party shall also pay for its own voluntarily-incurred expenses including, but limited to, attorney fees or expert witness fees. Any other expenses of the appraisal and the compensation of the umpire shall be paid equally by YOU and US.

7.  Other Insurance. YOU and WE agree that the insurance provided under the Commercial Property Form has been requested by YOU because YOU believe that no other coverage acceptable to YOU is in force to protect YOUR interest in the COMMERCIAL PROPERTY.

   Coverage under the Commercial Property Form will automatically terminate on the effective date and time of any other policy or certificate of insurance acceptable to YOU. WE shall not make any payment for any claim or LOSS if other coverage acceptable to YOU is in force on the DATE OF LOSS.

8.  Subrogation. WE shall be subrogated to any right YOU have to recover against any person(s). However, WE shall not exercise this right against the BORROWER. WE may require an assignment of rights of recovery from YOU to the extent that payment is made by US. If an assignment is sought, YOU and the BORROWER shall sign and deliver all requested documents, and will otherwise cooperate with US and do nothing to impair OUR subrogation rights.

9.  Suit against US. No action may be brought unless there has been compliance with the provisions of the Commercial Property Form and the action is started within one year after the DATE OF LOSS.

10.  Repair or Replacement Option. WE may repair or replace any part of the damaged property with equivalent property if WE have given YOU or mailed to YOU at YOUR last known address, written notice of OUR intention to do so within 30 days after WE receive YOUR signed, sworn proof of loss.

11.  Loss Payment. WE will adjust each LOSS with YOU, and WE will pay YOU. If the amount of LOSS exceeds YOUR insurable interest, WE will pay the BORROWER    any residual amount due for the LOSS, not exceeding the Limit of Liability indicated on the EVIDENCE OF INSURANCE. Payment for LOSS will be made within 30 days after WE reach agreement with YOU as to the amount of the LOSS or, failing that, the entry of a final judgment or the filing of an appraisal award with US.

12.  Abandonment. WE have the right to take all, part, or none of the property for which WE have paid YOU or the BORROWER, but neither YOU nor the BORROWER can abandon any property to US without OUR prior written approval.

(PM7\MF1F\01A09MFPO0002E1103)                                                          STK# 00 0000

13. No benefit to Bailee. WE will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of the Commercial Property Form.

14. Cancellation:

    a.  YOU may cancel the insurance provided under the Commercial Property Form at any time by giving written notice to both US and the BORROWER stating when, thereafter, such cancellation is to take effect.

    b.  The BORROWER may cancel the insurance provided under the Commercial Property Form by providing proof of other acceptable insurance to YOU, which covers YOUR interest in the COMMERCIAL PROPERTY. In such case, the effective date of cancellation will be the effective date of the coverage obtained by the BORROWER or the effective date of the insurance provided under the Commercial Property Form, whichever is later.

    c.  WE may cancel the insurance provided under the Commercial Property Form if YOU have not paid the premium, and WE have given YOU 10 days' written notice at YOUR last address known to us. We may also cancel the insurance provided under the Commercial Property Form if we discover that other insurance acceptable to YOU is in effect to protect YOUR interest in the COMMERCIAL PROPERTY, even if such other insurance is discovered after a LOSS.

    d.  The completion of foreclosure proceedings on COMMERCIAL PROPERTY by YOU shall terminate insurance provided under the Commercial Property Form, and notice of foreclosure by YOU to US will be YOUR request for cancellation. Cancellation will be effective on the date the COMMERCIAL PROPERTY is conveyed to YOU or to a third party via the foreclosure process.

In the event of cancellation of the insurance provided under the Commercial Property Form, any refund will be computed on a pro-rata basis.

15. Expiration of Insurance. The Commercial Property Form is written under the terms of the Master Policy that has been issued to YOU. If the Master Policy is in force upon expiration of the insurance provided under the Commercial Property Form, YOU may request that new insurance under the Commercial Property Form be issued to cover the COMMERCIAL PROPERTY. If you fail to request the issuance of new insurance under the Commercial Property Form, the insurance on the COMMERCIAL PROPERTY will cease upon the expiration date stated in the EVIDENCE OF INSURANCE. If the Master Policy is no longer in force upon expiration of the Commercial Property Form, then all insurance under the Commercial Property Form will end on its expiration date.

16. Changes of Provisions. No change may be made to any provision of the Commercial Property Form except by written endorsement issued by US. No other written changes or oral changes will be valid. OUR request for appraisal or examination(s) under oath shall not waive any of our rights.

17. Assignment. There shall be no valid assignment of YOUR rights or the rights of the BORROWER under the Commercial Property Form unless WE have given OUR advance written consent to YOU and the BORROWER.

IN WITNESS WHEREOF, Balboa Insurance Company has caused the Commercial Property Form to be signed by its President and Secretary, at Irvine, California.


SECRETARY                                                    PRESIDENT


01A09-MFPO0002-E1103                                    6

(PM7\MF1F\01A09MFEN0001E1103)                                                    STK# 00 0000

## BALBOA Life and Casualty
3349 Michelson Drive, Suite 200, Irvine, CA 92612-8893

☑ Balboa Insurance Company    ☐ Meritplan Insurance Company    ☐ Newport Insurance Company

### UNACCEPTABLE RISK ENDORSEMENT

It is hereby understood and agreed that the Master Policy coverages shall not apply to any of the following risks:

A. Institutional occupancies (ie: schools, dormitories, jails, hospitals, clinics, retirement homes, convalescent homes, etc.):
B. Railroad or aviation risks:
C. Builders risk policies or any publicly owned buildings;
D. Bridges, piers, wharfs, docks and drydocks;
E. Camps and recreational facilities;
F. Chemical works or petrochemical plants, or any operations which include fireworks or fuse manufacturing;
G. Oil or gas plants or public utilities or offshore oil risks;
H. Lumber mills or mining operations;
I. Livestock mortality;
J. Loss or damage to growing and/or standing crops;
K. Amusement parks;
L. Boilers and machinery;
M. Any asbestos operations;
N. Contents and liability;
O. Property pollution;
P. Churches;
Q. Moveable mobile homes (ie: mobile homes without a permanent foundation and permanently connected plumbing, electricity and gas).

All other terms and conditions of the Master Policy remain the same.


01A09-MFEN0001-E1103

STK# 00 1401

# BALBOA LIFE AND CASUALTY
## HOME OFFICE - IRVINE, CA - A STOCK COMPANY

| | |
|---|---|
| ☑ **BALBOA INSURANCE COMPANY**<br>☐ **MERITPLAN INSURANCE COMPANY**<br>☐ **NEWPORT INSURANCE COMPANY** | LENDERS PROTECTION PROGRAM<br>AUTOMATIC COVERAGE ENDORSEMENT |

| **Named Insured** | **Master Policy** |
|---|---|
| General Motors Acceptance Corp. Mortgage | 6043-0002 thru 0005 |

Effective Date: Same as Master Policy effective date unless otherwise indicated _____10/01/04_____ .

Beginning on the effective date of this endorsement:

If there is a loss to residential or commercial property that is eligible for coverage under this Policy; and

Other acceptable physical damage insurance was terminated prior to the loss; and

If no notification has been issued to the Borrower that coverage has been placed on the property; then we will:

Cover that loss up to your interest in the property at the time of loss and issue notification to the borrower that coverage protecting only your interest has been placed on the property effective the date other acceptable physical damage insurance terminated.

This does not apply to properties that acceptable physical damage insurance terminated prior to the effective date of this Policy or to property in which the Borrower no longer has an interest as a result of foreclosure proceeding. It only applies to property on which there is an outstanding mortgage.

Automatic coverage is limited to only those risk in which the amount of force placed coverage would have been less than $ _____5,000,000_____

F292E-R0894

# **GMAC** Mortgage

PO Box 4025
Coraopolis, PA 15108-6942

Notification Date:  11/27/2005

0002447 - 0003098

BILLY WILLIAMS
TERESA WILLIAMS
678 CO RD 620
ENTERPRISE, AL
        36330-5456

NOTICE OF PLACEMENT

RE: **REFERENCE NUMBER: 5901**
    Loan Number: 5901-0000-0833002922
    Hazard Insurance Uninsured Date:  05/27/2005
    Property Location: 678 CO RD 620
                ENTERPRISE AL       36330

Certificate # :    B-7136890
Effective Date:    05/27/2005      Expiration Date: 05/27/2006
Dwelling Limit:    $32,311      Annual Charge:    $518.00
Residential Deductible: $500.00 (except GU, NM, OK, VT and WV -
Deductible $250.00)
Commercial Deductible: $500.00 (except CA, GU, NM and WV - Deductible
$1,000.00)
Commercial VMM Deductible: $5,000.00 or 2% whichever is greater
(Deductible may change if occupancy changes.)

Dear Customer:

We have obtained insurance coverage with BALBOA INSURANCE COMPANY to
provide the necessary insurance protection under the terms of your mortgage.
We have notified you during the past 90 days that this insurance would be
placed if we did not receive a copy of a valid hazard insurance policy.

The cost of the insurance in the amount of    $518.00 was advanced for the
period 05/27/2005 to 05/27/2006.  Appropriate changes to your monthly
payment will be made as indicated in our previous letter.

This insurance will remain in force unless we receive evidence of a hazard
insurance policy with an effective date on or before 05/27/2005.  Evidence
of a valid policy in effect at a later date will result in cancellation of
the coverage.  Any insurance charges not used will be credited to your
account.

### IMPORTANT NOTICE TO CUSTOMER

The insurance we obtained to protect our interest in your property applies
only to the dwelling at the coverage amount indicated.  Coverage does not
extend to contents or personal property and may not be adequate to protect
the equity in the property.  If your property is located in the state of
AK, AZ, AR, CA, CO, CT, DE, IN, KY, MA, MD, MN, MO, NC, NH, NY, OK, RI,
SC, TN, VA, WA, or WV, the coverage limit on this policy will be the
lesser of the principal balance on the loan at the time of placement or
the last known amount on any insurance policy which you previously
purchased on your own.  If your property is located in any other state
besides those listed in the previous sentence, the coverage will be
placed at the principal balance of the loan.  If the limit is only
sufficient to insure the principal balance of your loan then the force-
placed policy may not be adequate to protect the value of your property
that exceeds the amount of your mortgage.  Also, there is no coverage
for liability protection with this insurance.  This insurance may be more
expensive than coverage you could arrange on your own.  We recommend you
place full insurance coverage that adequately protects both your and the
lender's interest with a company of your choice.

Page 2

BILLY WILLIAMS
Loan Number: 5901-0000-0833002922

When you furnish acceptable proof of other insurance, the lender will cancel the insurance coverage and you will be entitled to a refund of any insurance charges not used. GMAC and/or an affiliate of our company may receive compensation as a result of the placing of this insurance.

Should you have any questions regarding this matter, please do not hesitate to contact our office at (800) 256-9962 from 5 a.m. to 7 p.m. PST, Monday through Friday. If you would like to submit a claim, please call (800) 323-7466. Your call may be monitored for quality assurance.

Thank you,                              MAIL POLICY TO:

Insurance Department                    GMAC Mortgage Corporation
GMAC Mortgage Corporation               P.O. Box 4025
                                        Coraopolis, PA 15108-6942

                                        Or Fax to: (866) 336-9021



6002647 - 0003899

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BILLY WILLIAMS and | ) | |
| TERESA WILLIAMS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO. |
| | ) | |
| BALBOA INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### AFFIDAVIT OF LARRY WILLEFORD

**STATE OF ARIZONA:**

**COUNTY OF MARICOPA:**

Before me, a Notary Public, in and for said State and County, personally appeared Larry Willeford, whose name is known to me, and who, being by me first duly sworn, deposes and says as follows:

1.     My name is Larry Willeford and I am Vice President of Claims with Balboa Insurance Company. I have personal knowledge of the matters set forth below.

2.     Attached are true and correct copies of certain documents concerning the claim file relating to the property located at 678 County Road 620 in Coffee County, Alabama. These documents are kept in the course of the regularly conducted business activity of Balboa Insurance Company, and it is the regular practice of Balboa Insurance Company to make and maintain these records.

Further Affiant sayeth not.

1



EXHIBIT
C

LARRY WILLEFORD

Sworn to and subscribed before me on
this 18 day of June , 2007.

NOTARY PUBLIC
My Commission Expires: 02-15-2009

SANDRA M. JORDAN
Notary Public, State of Texas
My Commission Expires 02-15-09

2



September 26, 2006

GMAC Mortgage (LPI)
Loss Draft Dept.

RE:    Insured:              Billy Williams
       Claim No.:            GM7136890, 1
       Date of Loss:         02/05/2006
       Loan No.:             5901-0000-0833002922
       Type of Loss:         FIRE

Dear Loss Draft Dept.

We are writing to provide you with a summary of the claim payment issued for your loss. The coverage limit of $32,311.00 is the maximum amount allowed. The money paid to date represents the actual cash value of your loss.

Under Section I-Conditions-Loss Settlement, certain property is settled based on actual cash value. Because the damage to your property is subject to this type of evaluation, we have based our actual cash settlement on the replacement cost of the property less depreciation.  The depreciation factor applied is based on the age, use and condition of your property at the time of the loss.  Our determination of the actual cash value using this formula allows our customer to receive a more beneficial settlement of the property.  Please refer to the damage evaluation section of this letter for a complete breakdown.

You may recover the refundable depreciation by sending us a work completion certificate from your contractor or the receipts and invoices documenting the repair to the risk. Should you replace or repair the damage for less money than the amount allowed, we will pay the amount owed based on your actual cost.  Under the terms of the policy, you have 180 days from the date of loss to file this additional claim.

**If a loss payment was not enclosed in this correspondence, then the actual cash value payment has been sent to GMAC Mortgage (LPI).  You may reach them at 866-354-7281.  A photocopy of our adjuster's estimate is enclosed for your records.**

Page Two

| DAMAGE EVALUATION | |
|---|---|
| REPLACEMENT COST ESTIMATE (This is the amount it will take to properly repair your property) | $16,899.00 |
| LESS NON-REFUNDABLE DEPRECIATION: (This is the amount that you are not able to recover.  These items are paid at actual cash value only and include carpet and pad.) | $943.68 |
| REPLACEMENT COST AVAILABLE (This is the total amount it will take to properly repair your property minus the non refundable depreciation) | $15,955.32 |
| LESS REFUNDABLE DEPRECIATION (This is the amount deducted from the replacement cost per your policy to determine the actual cash value payment made to you.  This amount will be refunded to you once the repairs are complete for replacing drywall, painting, etc.) | $4,863.93 |
| LESS DEDUCTIBLE (This is the amount you are responsible for) | $500.00 |
| PRIOR PAYMENT: | $7,196.49 |
| ACTUAL CASH VALUE  PAYMENT (This is the amount of the loss payment issued) | $3,394.90 |

In addition to the Replacement Cost Available figure noted above, appropriate Profit and Overhead totaling $3,207.76 charged by a general contractor will be allowed. To make a claim for the Profit and Overhead, please submit a copy of the signed Work Authorization. If additional damages are discovered, it is your responsibility to inform us of the additional damages and allow inspection before repairs are made. Failure to do so may jeopardize your ability to recover for the full amount of the additional damages. Balboa Insurance Company reserves the right to inspect the property or require additional information prior to the release of any additional funds.

Sincerely,

*Tancy Nelson*

Tancy Nelson
Claim Representative
**Balboa Insurance Company**
1 888-898-1546, Ext.  1421

Encl.:  Estimate **AND CHECK**

CC:    Billy Williams

March 23, 2007

**VIA OVERNIGHT MAIL**

Balboa Insurance Group
Attn: Tancy Nelson, Claim Representative

> Re:  Insured:      Billy Williams
>       Claim No.:    GM7136890,1
>       D/O/L:        02-05-2006
>       Loan No.:     5901-0000-0833002922
>       Type of Loss: FIRE

Dear Ms. Nelson:

Enclosed are two (2) estimates previously sent to you which reflect that the damage to our dwelling exceeds the policy limits of the insurance your company has our dwelling. However, Balboa has only paid a fraction of those damages and no contractor will do the repairs for the amount of your payment. We have repeatedly informed you of this, but you have apparently ignored our requests. As a result, foreclosure proceedings have been filed against us and our home is set for foreclosure sale in April. We dispute Balboa's claim payment and demand that full payment be made to satisfy our mortgage immediately.

Additionally, we have yet to receive a copy of the insurance policy at issue, despite numerous requests to you and to GMAC. We demand that a copy of the complete policy be delivered to us at once via facsimile at (334) 347-5578.

Please be advised that if the above requests are not honored and/or if the foreclosure sale scheduled for April 17, 2007, goes through, legal action may be taken against Balboa.

Sincerely,

*Billy, Teresa Williams*

Billy and Teresa Williams

cc:    GMAC Mortgage
       P.O. Box 25142
       Santa Ana, CA 92799-9905

       GMAC Mortgage
       P.O. Box 780
       Waterloo, IA 50704-0780

Ms. Colleen McCullough
Sirote & Permitt
P.O. Box 55727
Birmingham, Alabama 35255-5727

# **GMAC** Mortgage

P.O. Box 25144
Santa Ana, CA 92759-5144

November 15, 2006

Billy Williams
678 Co Rd 620
Enterprise, AL 36330-0000

RE: Property Address   :678 Co Rd 620  Enterprise, AL 36330-0000
    Tracking No.       : 740813
    Date of Loss       : 02/05/2006

Dear Billy Williams :

A review of your hazard insurance claim reflects a balance being held in escrow for restoration of the above-referenced property.

Please contact our office at 1-866-354-7281 to discuss the status of the repairs as soon as possible.

Sincerely,

Insurance Claims Center
FAX: (866)336-3811

$10,591³⁴
received from Bilbo

We want to put this toward the
Mortgage until they pay the rest to you from
Bilbo.

Thanks.

Leura Williams
Billy Williams

We need to postpone
the foreclosure until this money
is settled, apply this and
do a repayment
plan.

Contract # *537*

Estimate/Bill


*Billy & Teresa Williams*
*678 cnty Rd 620*
*Alabama*

# B&B Construction

### Quality Work Done Right the First Time
### Enterprise, Alabama
### (334) 806-7778

Work to be Performed -

*Tear out all damaged floor joist, decking, and floor covering ( eg. linoleum ect)*
*replace damaged Joists decking, Tear out interior wall sheathing, replace w/ drywall and finish*
*to be ready to paint Tear out and replace damaged electrical wiring and fixtures, Tear out*
*interior ceilings and replace with drywall to be finished to be able to paint Tear out and replace*
*Bathroom fixtures (Tub toilet sink vanities) Tear out & replace kitchen cabnets & sink  Tear off all damaged*
*roof rafters and decking & replace to original, Tear off and replace shingle roof,  Tear off & replace*
*exterior Damaged exterior siding & facia*
*Tear out & replace front windows*

All Work listed above is to be performed for the below mentioned price, any additional work not
listed above may be submitted in writing to below signed contractor, additional work not listed
above may be added to said contract for an additional fee to be determined by said contractor,
also any additional work may be declined by said contractor with no negative affects to regards
to original agreement.

Fee to be paid as follows – A retainer of 45% of total price to be paid up front with remainder to
be paid ~~immediately upon completion of job.~~
*as follows, 20% to be paid upon completion of roof and the gutting of the house*

Notes -

_____
_____
_____
_____

TOTAL *44,738⁰⁰* _____

Paid _____
Balance remaining _____

Contractor                                    Responsible Party
*Eric Dixon*                            _____
*[signature]*                           _____
_____        _____

# PROPOSAL

No.
Date 3-25-06
Sheet No.

**Proposal Submitted To:**

Name Jerry Gentile

Street Hwy 84

City New Brockton State ALA

Phone 894-0869

**Work To Be Performed At:**

Billy Williams

Street 678 County Rd 620

City Ent State ALA

Date of Plans                Architect

We hereby propose to furnish the materials and perform the labor necessary for the completion of

Replace Roof, Rafters, Decking & Shingles where Burnt.
Tear out Kitchen wall & ceiling & Replace Burnt
Framing.
Replace Sheatrock & WALLS
Flooring Bucked & Install new flooring
Replace wiring where Burnt.
Replace CARPET.
Replace DOORS unit to side Room.
Gut out entire Kitchen ( new Cabinets )
Install Insulation.
Paint Inside .        Total = $41,500.00

All material is guaranteed to be as specified, and the above work to be performed in accordance with the drawings and specifications submitted for above work and completed in a substantial workmanlike manner for the sum of
Forty one thousand five Fire hundred                    Dollars ($ 41,500.00 )
with payments to be made as follows:

Any alteration or deviation from above specifications involving extra costs, will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado and other necessary insurance upon above work. Workmen's Compensation and Public Liability Insurance on above work to be taken out by

Respectfully submitted _J. J. Little_

Per

Note—This proposal may be withdrawn by us if not accepted
within **5** days.

## ACCEPTANCE OF PROPOSAL

The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Date                                    Signature

                                        Signature

Form 3650                    ORIGINAL                    MADE IN U.S.A

866 - 336 - 9054
Att: Tancy Nelson

Tancy,
    These are the estimates
from the contractors that would
write one. I have a list of them
that won't do burn outs, or won't
touch ours because its to much
to fix. They are as follows:
1. Billy Cotter Const.
2. Jeff Petty              7. McCrea - Whittaker Const.
3. Terry McDuffie          8. Prestige Const.
4. Boland Homes            9. R + J Const.
5. C+M Contractors         10 Scotty Hutto Const.
6. Jackson Const.          11. United Contracting.
They said it would cost this much to
put it back safe and to get the burnt
smell out. Some of them said if I
had enough insurance to pay SMPC
that I should do that and buy a
moble home for the lot. I don't
know the pay off or the amount it was
insured for but I guess we want to
pay it off since we will have to pay alot
with the insurance to get it fixed. I can
be reached at 334- ~~XXXXXX~~. Thanks, Teresa Williams
                494-7038