IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BILLY WILLIAMS and ) | |
| TERESA WILLIAMS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CASE NO.   1:07-CV-549-WHA |
| ) | |
| BALBOA INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**BALBOA INSURANCE COMPANY'S  REPLY TO PLAINTIFFS' OPPOSITION TO BALBOA INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Defendant Balboa Insurance Company, Inc. ("Balboa") has filed a motion for summary judgment on all of plaintiffs' claims and a brief in support thereof. Plaintiffs have filed an opposition to that motion.  This reply is in response to plaintiffs' opposition.

**I.   Plaintiffs Do Not Have Standing to Bring this Action.**

As pointed out in Balboa's original brief, plaintiffs lack standing because they are neither named insureds or additional insureds under the policy based on the undisputed facts of this case. GMAC is the "Named Insured" on the policy.  (Policy, at Balboa 00003, Exhibit 2 to Balboa's initial evidentiary submissions, Court file Doc. No.17, 17-2 through 17-6). The policy provides that "YOU," "YOUR," and "YOURS" means the "Named Insured." (*Id.*, Balboa 00008).  The policy further provides that Balboa agrees "to indemnify YOU for a LOSS, to the extent of YOUR insurable interest in such LOSS. The BORROWER is an additional insured with respect to any residual amounts of insurance **over and above YOUR insurable interest in the RESIDENTIAL PROPERTY**." (*Id.*). (emphasis added).

- 1 -

Plaintiffs do not offer any evidence to contradict the Declaration of Scott Zeitz of GMAC indicating that the amount owed on the mortgage loan by plaintiffs as of the date of the fire was $43,041.07. (Declaration of Scott Zeitz, ¶¶3-4, Exhibit 3 to Balboa's initial evidentiary submissions). Furthermore, plaintiffs offer no evidence to contradict Zeitz's statement that plaintiffs have made no payments since the time of the fire. (*Id*.). Since it is undisputed that the coverage limit under the policy is $32,311.00, there was no residual amount of insurance coverage over and above GMAC's insurable interest. Plaintiffs, therefore, are not named insureds or additional insureds under the policy terms. Accordingly, they have no standing to bring a breach of contract or a bad faith claim on the policy.

Plaintiffs attempt to escape the impact of their lack of standing by asserting that the term "insurable interest" is not defined in the policy and that it is ambiguous. (Plaintiffs' Brief, p. 10). Plaintiffs further argue that "insurable interest" can be interpreted as encompassing only the principal balance of plaintiffs' loan. *Id*.

Plaintiffs' argument fails to recognize that Alabama Code § 27-14-4 defines the term "insurable interest" within the context of property insurance is as follows:

> (b) "Insurable interest," as used in this section, means any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment.
>
> (c) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment thereof. (Acts 1971, No. 407, p. 707, § 317).

Alabama Code § 27-14-4.

In this case, the mortgage on the property clearly secures the full amount owed on the loan and not just the principal amount of the loan, providing as follows:

> This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

Mortgage, GMAC 0101, Exhibit 2 to T. Williams' Depo., attached as part of Exhibit 1 to Balboa's initial evidentiary submissions.

Under the statutory definition, GMAC's "insurable interest" in the property is equal to the total amount owed on the mortgage loan and secured by the mortgage, which based on the above undisputed evidence, exceeds the coverage limits under the policy. There is absolutely no basis for plaintiffs' contention that the term "insurable interest" can be narrowly interpreted as encompassing only the principal balance of plaintiffs' loan. Plaintiffs have provided absolutely no evidence that would satisfy their burden of showing that there would be insurance coverage over and above the amount due on the mortgage. Under the authority cited in Balboa's original brief, plaintiffs have no standing to bring their claims in this case. *Graphia v. Balboa Insurance Company, Inc.*, 517 F.Supp.2d 854 (E.D.La. 2007). *See also Levine v. Insurance Co. of North America*, 440 F.2d 679 (5th Cir. 1971), (a mortgagor, under a property insurance policy with a mortgage loss payable clause, can only maintain suit against the insurer if the mortgagor meets its burden showing that there was a balance after paying the mortgage, and the amount of that balance).

Plaintiffs' opposition also erroneously states that plaintiffs were paying the premiums. The insurance contract is between GMAC and Balboa, and GMAC paid the premiums on the policy. (Exhibit 14 to T. Williams' Depo., attached as part of Exhibit 1 to Balboa's initial evidentiary submissions). While plaintiffs may have been contractually obligated to reimburse GMAC for the amounts paid by GMAC for premium payments, that obligation is not from the

insurance policy, but rather is related to the lender's right to obtain protection for the lender's own interest and to charge the borrower in accordance with the terms of the mortgage. (Mortgage, GMAC 0103-0104). [1]

Finally, plaintiffs assert that the reference to Billy Williams as "the insured" in two letters written by Balboa somehow provides him standing in this case, despite the fact that the policy clearly provides that he has no rights as an insured based on the amount secured by the mortgage and the coverage limits. Tancy Nelson, who wrote the letters in question, testified in her deposition that she did not believe that Mr. Williams was the insured and that the reference was in error. Moreover, plaintiffs' rights under the policy are determined by the policy language and not by an erroneous reference in correspondence. David Toellner's references in the Cunningham Lindsey estimates to Billy Williams as "the insured" are similarly irrelevant, particularly in light of Toellner's testimony that he had no idea whether the Williams were insured under the policy. (Deposition of David Toellner, p. 71, l. 1-6, attached as Ex. 1 to Balboa's Supplemental Evidentiary Submissions).

In sum, it is clear that GMAC's insurable interest in the property exceeded the coverage limits of the policy; therefore, the Williams were not additional insureds under the policy and are not entitled to payment under the policy. For that reason, they have no standing to bring suit for breach of contract or bad faith.

**II.     Plaintiffs Do Not Have Standing to Sue as Third-Party Beneficiaries**.

---

[1] While GMAC may have charged plaintiffs for the cost of the premiums paid by GMAC as allowed by the mortgage, there is no evidence that plaintiffs made any payment to GMAC for those costs or for any other aspect of the loan during the relevant time period or thereafter. (Zeitz Declaration, ¶ 4; T. Williams Depo, p. 47, l. 14-20, attached as Ex. 2 to Balboa's Supplemental Evidentiary Submissions).

Under the language of the policy and the undisputed facts of this case, plaintiffs cannot recover under the contract as third-party beneficiaries. As set forth in Balboa's original brief, "one claiming to be a third-party beneficiary must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental benefit, upon the third-party." *Weathers Auto Glass, Inc. v. Alfa Mutual Ins. Co.*, 619 So.2d 1328 (Ala. 1993). *See also Keebler v. Glenwood Woodyard, Inc.*, 628 So.2d 566 (Ala. 1993). In *Keebler*, the Alabama Supreme Court held as follows:

> Where the contracting parties bestowed a benefit on some third-party but it is clear from the face of the contract that the contracting parties did not intend to confer this benefit directly on the third-party, the third-party is merely an incidental beneficiary and may not recover.

*Keebler*, 628 So.2d at 569. The Alabama Supreme Court has also established that:

> the courts must look to the surrounding circumstances of the transaction only when the contract is unclear as to whether the contracting parties intentionally conferred upon a third person a direct benefit; consequently, the court's inquiry may stop when it determines from the face of the contract that the parties did not intend to confer upon the third person a direct benefit.

*Collins v. City of Decatur*, 533 So.2d 1127, 1132 (Ala. 1988)

The policy contract in this case establishes that the intent of the parties is to provide coverage to GMAC to protect GMAC's insurable interest in the mortgaged property. The intent of the policy is clear in its title: "Lender's Protection Program." (Policy, Balboa 00008). The parties further express their intent in the policy stating "YOU and WE agree that the insurance provided under the residential property form has been requested by YOU because YOU believe that no other coverage acceptable to YOU is in force to protect YOUR interest in the RESIDENTIAL PROPERTY." (Policy, Balboa 00012). Furthermore, the policy provides that

Balboa will indemnify GMAC to the extent of its insurable interest in the loss. (*Id.*, Balboa 00008). The policy only indicates an intent to benefit the borrower if there are "any residual amounts over and above YOUR [GMAC's] insurable interest in the RESIDENTIAL PROPERTY." (*Id.*). Here there was no residual amount of insurance over GMAC's insurable interest, so the contract expresses no intent to provide a direct benefit to the borrower under these facts. The parties' intent to directly benefit GMAC and not the borrower when the amount of the coverage does not exceed GMAC's insurable interest is also expressed in the loss payment provision, which provides "We will adjust each LOSS with YOU and will pay YOU. If the amount of the LOSS exceeds YOUR insurable interest, WE will pay the borrower any residual amount due for the LOSS, not exceeding the applicable Limit of Liability indicated on the EVIDENCE OF INSURANCE." (Balboa 00012).

Plaintiffs have failed to cite any provision in the contract that would indicate an intent to directly benefit the borrower under the facts of this case. The fact that the insurance proceeds would be used to repair or replace the house is consistent with the intent of the lender to protect the value of the lender's interest in the property rather than indicating any intent to directly benefit the borrower. *Graphia*, 517 F.Supp.2d 854, 858 (finding that the unambiguous language of the contract, which is exactly the same as the language in this case, demonstrates that the lender is only interested in protecting its insurable interest in the mortgaged property). Under these facts, any benefit to the borrower is incidental. Plaintiffs have cited no facts and no law to the contrary.

The Alabama Supreme Court held in *Collins Co., Inc. v. City of Decatur*, 533 So.2d 1127 (Ala. 1988), that the court's inquiry should stop when the court determines from the face of the contract that the parties did not intend to confer a direct benefit upon a third-party. Nonetheless,

there is also nothing in the circumstances surrounding the policy formation that would indicate that GMAC and Balboa intended anything other than to protect GMAC's insurable interest in the property that is the subject of the mortgage. In fact, the mortgage itself clearly indicates that the purpose for which GMAC obtained the coverage stating that: "Lender may at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7." Mortgage, GMAC 0103. Plaintiff has cited no circumstances surrounding the purchase of the coverage by GMAC that indicate a contrary result.[2]

As noted in Balboa's original brief, a number of highly analogous holdings from the United States District Courts in Louisiana hold that borrowers cannot recover as third party beneficiaries on lender protection policies. *See, e.g., Graphia*, 517 F.Supp.2d at 858 (holding that a lender protection contract featuring the exact same language that is present in this case "evidences no intent to give plaintiff personal rights in the insurance coverage for losses that do not exceed the mortgagee's insurable interest);" *Verhoeven v. Balboa Ins. Co.*, 2007 WL 4374222 (ED.La. Dec. 13, 2007) (holding that the borrower was not a named insured or an intended third party beneficiary on a policy with the exact same relevant language as in the present case); *Harrison v. Safeco Insurance Company of America,* 2007 WL 1244268 (E.D.La. 2007) (holding that plaintiffs are not third-party beneficiaries of insurance policies that their mortgage companies placed on their properties).

Plaintiffs only response to this authority is to make the unsupported assertion that the *Graphia* case is not consistent with Alabama third-party beneficiary law. Plaintiffs fail to point out any specific language from *Graphia* that is inconsistent with Alabama law. Contrary to

---

[2] Plaintiffs seem to rely solely on the alleged foresee ability of harm argument. Under Alabama law, foreseeability alone does not confer third-party beneficiary status. *Harris Moran Seed Co.*, 949 So.2d at 916.

plaintiffs' unsupported argument, the principles applied by the courts in the cases cited above regarding the distinction between an intended beneficiary and an incidental beneficiary are consistent with Alabama law. *See e.g. Keebler*, 628 So.2d at 569 (where the face of the contract indicates that the contracting parties did not intend to confer a benefit directly on the third party, the third party is merely an incidental beneficiary and may not recover).

The United States District Court for the Southern District of Mississippi has also found that the borrower is not an intended third-party beneficiary to a policy purchased to protect the lender's interest in the property as mortgagee. *Paulk v. Balboa Ins. Co.*, 2006 WL 1994864 (S.D. Miss. 2006). For that reason, that court held that the benefits to the borrowers under the lender protection policy were merely incidental, which is insufficient to allow recovery by the borrower. *Paulk*, 2006 WL 1994864 at *2.

Moreover, in *Mergenthal v. Star Banc Corporation*, 701 N.E.2d 383 (Ohio Ct. App. 1997), the Ohio Court of Appeals held that the borrower lacked standing to challenge the handling of the settlement of fire loss under an insurance policy obtained by the lender after the borrower failed to obtain coverage. The Ohio court held that the purpose of the insurance contract between the lender and the insurer was to protect the lender's security interest and that the appellants could not claim that they were third-party beneficiaries under that contract because their benefit was only incidental to the policy. *Mergenthal*, 701 N.E.2d at 385. That court further held that the borrowers' ownership of the property does not automatically grant the owner an interest in the insurance policy. *Id*. The court also held that it is well settled that a mortgagee may procure insurance at the mortgagor's expense to protect the mortgagee's security interest and that the mortgagor cannot claim the advantage of insurance obtained by the mortgagee. *Id*.

In contrast to those cases, none of the cases cited by plaintiffs address an analogous fact situation. In fact, each of the cases is distinguishable on its facts. For example, in *Mutual Benefit Health & Accident Association of Omaha v. Bullard*, 270 Ala. 558, 120 So.2d 714 (1960), the only case that is discussed by plaintiffs as being factually analogous, the accident policy at issue expressly identified the plaintiff as an insured even though the employer was shown as the beneficiary of the policy. *Bullard,* 270 Ala. 559, 120 So.2d at 716. In holding that the employee was entitled to recover on the policy, the court construed the policy at issue as a group accident insurance policy between the employer and the insurer for the benefit of the employee such that the employee would have a right to enforce the promise. *Bullard*, 270 Ala. 565-567, 120 So.2d at 721-723. In contrast, the Balboa policy in the present case is obviously not a group policy obtained by the employer for the benefit of the employee. Unlike *Bullard*, plaintiffs are not "insureds" under the facts of this case. The intent of GMAC's policy in this case was to provide protection to the lender to the extent of the lender's interest in the collateral in the event of damage to the collateral. *Bullard*, therefore, does not apply.

This case is much more analogous to *United States Pipe & Foundry Co. v. United States Fidelity & Guaranty Co.*, 505 F.2d 88 (5th Cir. 1974), in which the court held that a lessor was not an intended beneficiary of the liability policy acquired by the lessee pursuant to the requirements of the lease. *United States Pipe & Foundry Co.,* 505 F.2d at 89-90.

In sum, under the undisputed facts of this case, the policy language shows that the intent of the parties was to protect the lender's interest in the collateral and any benefit to the borrowers under these facts was incidental. Both applicable Alabama law and the directly analogous cases from other jurisdictions support this conclusion. Plaintiffs have failed to cite any analogous authority dictating a contrary result. Accordingly, this court should grant summary judgment on

a matter of law on any claim by plaintiffs seeking to recover as third party beneficiaries under the lender protection policy between GMAC and Balboa.

### 3. Plaintiffs Completely Ignore the Fact that They Have No Basis to Recover for Bad Faith Claim.

Even assuming arguendo that plaintiffs could survive the fact that they lack standing to bring this action, they cannot state a claim for bad faith under Alabama law. As set out in Balboa's original brief, plaintiffs are not named insureds under the contract and are not additional insureds under the contract because there were no residual amounts of insurance over GMAC's insurable interest in the property. Furthermore, under the loss payment provision, there is no obligation to pay benefits to plaintiffs. GMAC is the only insured under the policy and the only entity designated as being entitled to benefits. Under these circumstances, there is no basis under Alabama law for plaintiffs to assert a bad faith claim. *Williams v. State Farm Mutual Ins. Co.,* 886 So.2d 72, 75-76 (Ala. 2003) (under Alabama law, it is well established that a party cannot bring an action against an insurance company for bad-faith failure to pay an insurance claim if the party does not have a direct contractual relationship with the insurance company); *Stewart v. State Farm Ins. Co..* 454 So.2d 513, 514 (Ala. 1984) (the tort of bad faith refusal to pay is a refusal to pay valid claims made by the insured of this insurance carrier); *Dickey v. Alabama Farm Bureau Mutual Ins. Co.*, 447 So.2d 693, 694 (Ala. 1984) (this court has held repeatedly that the plaintiff in a bad faith case has the burden of proving that "an insurance contract existed between the parties [plaintiffs/insured, defendant/insured] and a breach thereof by the defendant"). *See also*, *American Bankers Ins. Co. of Florida v. Wells*, 819 So.2d 1196, 1207 (Miss. 2001) (the duty of good faith and fair dealing arises from the existence of a *contract* between the parties. The lender contracted with the insurer to insure the lender's interest, not the

borrowers, and there is no authority that the lender owes a duty of good faith and fair dealing to the borrowers in that circumstance).

Plaintiffs completely ignore this basis for summary judgment on their bad faith claim and fail to provide any factual or legal basis for recovery by them on a bad faith claim. For that additional reason, this Court should grant Balboa's motion for summary judgment as to plaintiffs' bad faith claim.

### 4. There is No Basis for Finding that Balboa Acted in Bad Faith.

Even if a non-party to the policy contract with no right to benefits under the clear policy language could somehow state a bad faith claim, there is insufficient evidence to sustain a bad faith claim under the undisputed facts of this case.

Plaintiffs' bad faith argument ignores a number of undisputed facts. It is undisputed that Balboa retained an independent adjuster with approximately twenty years of experience with numerous insurance companies and independent adjusting firms. (Declaration of David Toellner, ¶3, attached as Ex. 4 to Balboa's initial Evidentiary Submissions). That adjuster, David Toellner, has worked on more than one-thousand fire damage claims involving homes. (*Id.*) Toellner inspected plaintiffs' home and took measurements and photographs of the damage. (*Id.* at ¶ 4). There is no evidence that Toellner's inspection was in any way inadequate.[3]

Toellner's use of the MSB computer software program to obtain local labor and material pricing is standard and customary in the claim adjusting industry. (Toellner Declaration, ¶ 5; Toellner Deposition, p. 114, l. 14-17). Toellner has found the program to be reliable and accurate based on his twenty plus years of experience in adjusting claims. (Toellner Declaration,

---

[3] While plaintiffs criticize Toellner's fishing after his inspection, Mr. Williams testified that he told Toellner "I didn't have a problem with him fishing." (Billy Williams Depo., p. 22, l. 10-20, attached as Ex. 3 to Balboa's Supplemental Evidentiary Submissions). The undisputed evidence is that the fishing had no impact on Toellner's investigation. (Toellner Depo., p. 118, l. 8-11).

¶ 5). Toellner testified that he had the ability to change the pricing on the computer if he felt that it was appropriate, as long as he explained the change. (Toellner Depo., p. 47, l. 8-22; p. 48, l. 2-6). Toellner further testified that on the occasions that he has specifically checked a materials price at the request of a customer, he has found that the program was correct. (Id. at 51, l. 6-23; 52, l. 1). While Toellner indicated that there were times in the past when he changed an estimate to adjust the price given by MSB, there was no indication that he believed the program was inaccurate in the Williams case. In fact, Toellner has stated that the estimate is accurate, and Nelson testified that she agreed with the adjuster's estimate. (Toellner Declaration, ¶13; Deposition of Tancy Nelson, p. 126, l. 25; 127, l. 1-19, Ex. 4 to Balboa's Supplemental Evidentiary Submissions).[4]

When Tancy Nelson received lump sum estimates from plaintiffs with no details as to the scope of the work of pricing, she requested that Toellner contact Ms. Williams and obtain an itemized estimate from the contractor of her choice. (Toellner Declaration, ¶¶6-7). Toellner also testified that he needed the itemized estimate because he could not determine the details of the pricing or the scope of the work from the lump sum estimates provided by plaintiffs. (Toellner Depo., p. 121, l. 6-23; p. 122, l. 1-23; p. 123, l. 1-20; p.124, l. 4-22).

Toellner reviewed the itemized estimate that he received from the contractor and compared it to the original estimate and inspection report that he prepared. He then made changes in the scope of work where he believed that the contractor's suggested scope of work

---

[4] Plaintiffs' brief erroneously states that Tancy Nelson testified that the MSB program has produced results that were "unfair to the homeowner" more than twenty times in the last eight years. Plaintiffs' counsel's questioning was not specific to the MSB program, and Nelson testified that she had also used another program during the time period in question, which included her work for other employers. (Nelson Depo., p. 17, l. 3-25; p. 18, l. 1-25; p. 19, l. 1-25; p. 20, l. 8-25; p. 21, l. 1-25; p. 22, l. 1-25; p. 23, l. 1-25; p. 24, l. 1-21; 37, l. 6-25; p. 38, l. 1-25; p. 39, l. 1-25; p. 40, l. 1-22).

items were reasonable. He then produced a revised estimate. (Toellner Declaration, ¶8). Balboa issued a supplemental payment based on that revised estimate to the insured mortgage company, GMAC.

In asserting that Tancy Nelson was not aware of the itemized estimate provided by plaintiffs' contractor, plaintiffs fail to point out that Nelson clarified her testimony by explaining that she was aware that the adjuster received an itemized estimate, but was simply not aware that he obtained it by using a form printed out of the MSB system. (Nelson Depo., p. 135, l. 23-25; p. 136, l. 1-3).

Plaintiffs completely ignore the fact that Toellner's investigation established a debatable reason for refusing to pay the amount of the itemized estimate submitted by plaintiffs. Plaintiffs fail to address Toellner's conclusion based on his experience and from his inspection that the bathrooms could be cleaned rather than completely gutted and replaced. (Toellner Declaration, ¶9). Plaintiffs fail to address the fact that their contractor's estimate improperly called for the replacement of acoustical ceilings with drywall ceilings, which even Mr. Williams acknowledged were more expensive. (B. Williams Depo., p. 40, l. 23; p. 41, l. 1-9).

Furthermore, plaintiffs fail to address Toellner's opinion, with specific examples, that the pricing in the contractor's estimate was unreasonably high and/or inconsistent based on his experience and his inspection. (Toellner Declaration, ¶¶11-12; Balboa's original brief, pp. 15-16). Based on Toellner's estimates, Balboa had a reasonably legitimate and arguable reason for its determination as to the amount payable to GMAC on the claim. *Preis v. Lexington Ins. Co.*, 508 F.Supp.2d 1061, 1077 (S.D. Ala. 2007) (finding no ordinary bad faith because the independent adjuster's investigation, opinion, and recommendation, provided the insurer with a debatable reason for refusing to pay any more on the claim); *Singleton v. State Farm Fire &*

*Casualty Co.*, 928 So.2d 280, 283 (Ala. 2005) ("'bad faith…is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of known duty, i.e., good faith and fair dealing, through some motive of self interest or ill will.'"). Clearly, there is, at a minimum, a legitimate dispute as to the value of the damage to the property. That genuine dispute provides no basis for a bad faith claim, even if the Williams somehow had standing to assert such a claim, which is denied.[5]

Balboa considered all of the information submitted by plaintiffs and Toellner subjected the itemized estimate provided by the contractor to cognitive evaluation and made adjustments that he felt, based on his experience, were appropriate. There is no basis for finding that Toellner's investigation or Balboa's reliance on it constitutes a bad faith failure to investigate under Alabama law. *Preis v. Lexington Ins. Co.*, 508 F.Supp.2d at 1061, 1077 (finding no bad faith where the insurance company's independent adjuster completed an investigation prior to the insurer's denial of the claim and the plaintiffs' institution of the action).

Plaintiffs' assertion that Tancy Nelson told Ms. Williams that she would pay the contractor's estimate if he would complete an itemization is irrelevant to the bad faith claim. There is no indication that Ms. Williams took any action in relying on that alleged statement. The testimony also makes no sense. Ms. Williams acknowledged that at the time Nelson requested the itemized estimate, Nelson did not know what the estimate was going to say. In any event, plaintiffs failed to provide any explanation as to how this alleged statement is relevant to whether

---

[5] Plaintiffs criticize Balboa for not paying the exact amount of the recommendation on the estimate. This assertion ignores Toellner's testimony that the recommendation on the estimate would include overhead and profit, which, under the policy terms, is to be withheld from the initial payment. (Toellner Depo., p. 120, l. 8-23; p. 121, l. 1-23; p. 122, l. 1; Policy, Balboa 00008 (actual cash value subject to deduction for contractor's overhead and profit)). There is no evidence that Balboa's payment to GMAC was not the appropriate amount pursuant to the policy provisions and based on the numbers in Toellner's September 25, 2006 estimate. (Exhibit 31 to T. Williams Depo., attached as part of Exhibit 1 to Balboa's initial evidentiary submissions).

Balboa had a debatable reason for the amount of its payment on the claim or whether Balboa intentionally failed to determine whether there was a debatable reason.

There is also no basis for plaintiffs' assertion that alleged delay relating to the investigation supports their bad faith claim. There was approximately a three month time period between the time David Toellner received the itemized estimate and the time that he submitted his revised estimate. Decisions interpreting Alabama bad faith law have held that delays of similar or longer lengths of time do not amount to bad faith. *Neal v. State Farm Fire & Casualty Co.*, 908 F.2d 923 (11th Cir. 1990) (over a four month delay); Coleman v. Gulf *Life Ins. Co.*, 514 So.2d 944, 946-947 (Ala. 1987) (over a four month delay from the receipt of missing policy information and eight months overall); *Blue Cross and Blue Shield of Alabama v. Granger*, 461 So.2d 1320, 1327-1328 (Ala. 1984) (delay of over one year).

Accordingly, there is no basis under Alabama law for finding that the approximately three month period between the receipt of the itemized estimate and the completion of the revised estimate by Toellner supports a bad faith claim against Balboa. This is particularly true since Tancy Nelson followed up with Toellner on a regular basis and issued the supplemental payment to GMAC the day after she received Toellner's revised estimate. There is certainly no evidence that the delay was a result of any intent to injure.

Plaintiffs further fail to provide any evidence that Balboa had a dishonest purpose as required under Alabama bad faith law. *Pioneer Services, Inc. v. Auto Owners Ins. Co.*, 2007 WL 20059109 (M.D. Ala. 2007). Balboa's claim representative, Tancy Nelson, relied on the estimate of an experienced claim adjuster who prepared the estimate based on his experience and utilizing local pricing information obtained from a program that is standard in the industry and accurate based on his experience. (Toellner Declaration, ¶5; Toellner Depo., p. 114, l. 9-17).

Toellner further testified that had his estimate been higher, he would have been paid more money under the fee arrangement between Balboa and Cunningham Lindsey. (Toellner Depo., p. 116, l. 11-19).  There is simply no evidentiary basis for finding that Balboa had a dishonest purpose motivated by self-interest or ill will, as required under Alabama bad faith law.

### IV.   Conclusion

For the above reasons, this Court should grant Balboa's motion for summary judgment on all of plaintiffs' claims.

Respectfully submitted,

*s/Henry T. Morrissette*
HENRY T. MORRISSETTE
Bar No.: 7622-E54H

OF COUNSEL:

HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama  36601
Telephone:     (251) 432-5511
Fax:                (251) 694-6375
E-Mail: hmorrissette@handarendall.com

STEPHEN N. FITTS, III
Bar No.: 9079-T52F

HAND ARENDALL, LLC
2001 Park Place North, Suite 1200
Birmingham, Alabama  35203
Telephone:  (205) 324-4400
Facsimile:   (205) 397-1316
E-Mail: sfitts@handarendall.com

Attorneys for Defendant Balboa Insurance Company

- 17 -

**CERTIFICATE OF SERVICE**

  I do certify that on **March 24, 2008**, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, and request the Court to serve the same electronically, on the following counsel:

Joseph Dan Talmadge , Jr.  dtalmadge@mcatlaw.com


            *s/Henry T. Morrissette*
            OF COUNSEL


742796