IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BILLY WILLIAMS and ) | |
| TERESA WILLIAMS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CASE NO.   1:07-cv-549 |
| ) | |
| BALBOA INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT BALBOA INSURANCE COMPANY'S
BRIEF REGARDING THE JURISDICTIONAL AMOUNT**

Pursuant to the Court's order on jurisdictional amount dated March 26, 2008, Balboa files the following brief regarding the jurisdictional amount at issue in this case.

**INTRODUCTION**

Plaintiffs are clearly seeking more than the $75,000.00 jurisdictional amount. Balboa met its burden in the Notice of Removal in demonstrating by the preponderance of the evidence that the amount in controversy in the case more likely than not exceeds $75,000.00. Plaintiffs, at least implicitly, agreed that the amount in controversy exceeds $75,000.00 because they made no attempt to state a contrary position or to in any way question the jurisdiction of this Court. In fact, plaintiffs' counsel has set forth a detailed evaluation of this case claiming that his clients would be entitled to a verdict in the range of $264,933.00 to $454,044.00 if plaintiffs prevail on all their claims.

This Court's order questioning the jurisdictional amount in this case is based on plaintiffs' response to Balboa's motion for summary judgment on the standing issue. Balboa's motion establishes that plaintiffs do not have standing because they are neither insureds nor

additional insureds under GMAC's policy with Balboa. Plaintiffs argue that there would be at least some residual coverage under GMAC's policy because GMAC's insurable interest should be construed as limited to the principal owed on the loan. As explained below, plaintiffs' argument is incorrect because there is no coverage under the policy over and above GMAC's insurable interest as defined by the Alabama Code. Moreover, it is clear that plaintiffs are not limiting the amount of their claim in general, but are simply arguing, without basis, that there would be some amount of residual coverage, even if the Court were to accept Balboa's standing defense. Controlling authority in this Circuit clearly dictates that a reduction in plaintiffs' potential recovery as a result of a defense does not impact the jurisdictional amount of the claim. Accordingly, this Court should maintain jurisdiction in this action.

**I.     Plaintiffs are Seeking More Than the Jurisdictional Minimum in This Case**.

Plaintiffs are clearly seeking more than the $75,000.00 jurisdictional minimum. Balboa removed this case to this Court on June 20, 2007 (Doc. No. 1) on the basis that plaintiffs' claim for additional payments on the insurance policy issued to GMAC, plus plaintiffs' claim for damages for mental anguish and for punitive damages, establish that the amount in controversy in this case exceeds $75,000.00. *See Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002) (The preponderance of the evidence standard applies for proving the amount in controversy when the complaint does not specify the total amount of damages demanded).

As of the time of the filing of the lawsuit, Balboa had paid a total of $10,591.39 to GMAC, while holding back $4,863.93 in refundable depreciation and $3,207.76 in overhead and profit, pursuant to the policy provisions regarding payment of these additional funds. (September 26, 2006 letter to GMAC from Tancy Nelson, attached to the Affidavit of Larry Willeford, Ex. C to Notice of Removal, Doc. No. 1). While Balboa disputes plaintiffs' claims that they are entitled

to any payment, it is clear that plaintiffs' are claiming the difference between the amount already paid, $10,591.39, and the $32,311.00 policy limits, or a net amount of $21,719.61. (Plaintiffs' First Amended Initial Disclosures, attached hereto as Ex. 1). Plaintiffs are also seeking damages for mental anguish and punitive damages. Defendant adopts and incorporates that Notice of Removal herein. Plaintiffs at least implicitly agree that the amount in controversy exceeds $75,000.00 in that they have made no attempt to dispute or contest that claim or the jurisdiction of this Court. This Court has maintained jurisdiction over this case since the June 20, 2007 removal.

Assuming arguendo that there was ever any basis for questioning whether the requisite amount in controversy exists in this case, plaintiffs' counsel's February 8, 2008 correspondence removed any possible doubt. [1] (February 8, 2008 letter from plaintiffs' counsel attached hereto as Ex. 2). That letter sets forth in detail plaintiffs' counsel's evaluation of the case and "the reasons supporting my evaluation of the case." (*Id.*). Plaintiffs' counsel demands $175,000.00 to settle the case. (*Id.*). More importantly, he asserts that he anticipates a jury verdict in the range of $264,933.00 and $454,044.00 if he is able to establish plaintiffs' claims, and further asserts that a one-to-one ratio compensatory to punitive damages ratio would yield a verdict between $176,622.00 and $227,022.00. (*Id.*). This evidence confirms that the amount in controversy is far in excess of $75,000.00. *Bankhead v. American Suzuki Motor Corporation*, 529 F.Supp.2d 1329 (M.D. Ala. 2008) (denying a motion to remand and holding that the jurisdictional amount requirement is satisfied by plaintiff's settlement demand letter demanding $150,000.00 to settle the case). That letter is not a bare bones preliminary demand letter. Instead, in that letter,

---

[1] Federal Rules of Evidence 408 does not prevent the consideration of settlement offers by the court for purposes of establishing the amount in controversy, which is an independent question from consideration of settlement discussions "to prove liability or the invalidity of the claim or its amount." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813 (7th Cir. 2006).

plaintiffs' counsel sets forth in detail the basis for plaintiffs' claims, the monetary calculation for mental anguish damages that he intends to present to the jury, and his evaluation of the claim for punitive damages. *Golden Apple Management Co., Inc. v. GEAC Computers, Inc.*, 990 F.Supp. 1364 (M.D. Ala. 1998) (citing specificity of settlement letter as to the amount claimed by the plaintiff as establishing that the settlement letter constitutes evidence of the amount in controversy sufficient to trigger the thirty day time limitation for removal).

Balboa obviously disputes plaintiffs' analysis of the case and their alleged entitlement to the damages outlined in the settlement letter. As reflected above and in Balboa's summary judgment briefing, plaintiffs do not have standing to recover any money under the policy. Furthermore, plaintiffs are not intended third-party beneficiaries under the contract, plaintiffs cannot state a claim for bad faith in that capacity, and plaintiffs have failed to present substantial evidence to support a bad faith claim.[2] It cannot be disputed, however, based on plaintiffs' claims in the complaint, the amount owed on plaintiffs' mortgage, plaintiffs' settlement demand, and plaintiffs' counsel's own representations as to the amount claimed by plaintiffs, that the amount "in controversy" is in excess of $75,000.00. Certainly, Balboa has established a prima facie case that the amount in controversy is in excess of $75,000.00, and plaintiffs have made no effort to refute this showing.

In fact, since plaintiffs have clearly indicated that they intend to seek an award far in excess of the jurisdictional amount if their claims survive summary judgment and reach the jury, it would be fundamentally unfair for this Court to remand the case for lack of jurisdictional amount. Assuming arguendo that they somehow survive summary judgment on the defenses referenced above, it is clear that plaintiffs intend to seek an amount in the range set forth in the

---

[2] Plaintiffs' counsel's settlement letter does not address plaintiffs' lack of standing.

February 8, 2008 letter. At that point, more than one year would have passed since the filing of the claim and Balboa would not be able to remove the case, despite the fact that it had been clear from the beginning that the amount in controversy was in excess of $75,000.00.

  II.  **Plaintiffs' Response to Defendant's Assertion that They Lack Standing Does Not Reduce the Jurisdictional Amount at Issue.**

  In the Court's March 26, 2008 Order raising the jurisdictional amount issue, the Court focused on plaintiffs' response to defendant's standing argument to raise the question as to whether plaintiffs' economic damage claim was limited to $109.93. (March 26, 2008 Court Order, Doc. No. 27). In considering the brief as a whole, it is clear that plaintiffs are not limiting their claim to $109.93. Instead, plaintiffs are seeking the full amount of coverage under the contract, both directly on a breach of contract claim and through their third-party beneficiary claim. In addition, as noted above, plaintiffs seek to recover damages for mental anguish on the contract claim and for mental anguish damages and punitive damages on plaintiffs' bad faith claim.

  As noted in Balboa's summary judgment briefing, plaintiffs lack standing because as borrowers they are neither named insureds nor additional insureds under GMAC's lender protection policy based on the undisputed facts of this case. GMAC is the "Named Insured" on the policy. (Policy, at Balboa 00003, Exhibit 2 to Balboa's initial evidentiary submissions, Court file Doc. No.17, 17-2 through 17-6). The policy provides that "YOU," "YOUR," and "YOURS" means the "Named Insured." (*Id*., Balboa 00008). The policy further provides that Balboa agrees "to indemnify YOU for a LOSS, to the extent of YOUR insurable interest in such LOSS. The BORROWER is an additional insured with respect to any residual amounts of insurance **over and above YOUR insurable interest in the RESIDENTIAL PROPERTY**." (*Id*.). (emphasis added). Based on the evidence submitted in conjunction with the summary judgment brief,

5

GMAC's insurable interest in the mortgage exceeds the coverage available under the policy such that plaintiffs are not named insureds or additional insureds under the policy terms and have no right to payment. (Declaration of Scott Zeitz, ¶¶3-4, Exhibit 3 to Balboa's initial Evidentiary Submissions). Accordingly, plaintiffs have no standing to bring a breach of contract or bad faith claim under the policy.

In their opposition brief, plaintiffs asserted that there would be some small amount of coverage sufficient to enable plaintiffs to sue for defendant's breach of contract, even if the Court accepts Balboa's standing argument. Plaintiffs based this assertion on their claim that GMAC's insurable interest can be construed as being limited to the principal balance of the loan. (Plaintiffs' Summary Judgment Opposition, Doc. No. 23, p. 10). That argument in response to the standing defense is the source of the $109.93 amount cited in the Court's order.

As a threshold matter, plaintiffs' argument is incorrect. As set forth in Balboa's reply to plaintiffs' opposition to Balboa's motion for summary judgment (Doc. No. 24), plaintiffs' argument fails to recognize that Alabama Code § 27-14-4 defines the term "insurable interest" as being the entire economic interest in the property. Ala. Code § 27-14-4. In the present case, the mortgage on the property secures the full amount owed on the loan and not just the principal of the loan. (Mortgage, GMAC 0101, attached as part of Ex. 1 to Balboa's initial Evidentiary Submissions, Doc. No. 17). Under the statutory definition, GMAC's "insurable interest" in the property is equal to the total amount owed on the mortgage loan and secured by the mortgage, which equaled $43,041.07 at the time of the fire and has not been reduced because plaintiffs have made no further payments on their loan since before the fire. (Declaration of Scott Zeitz, ¶¶3-4, Exhibit 3 to Balboa's initial Evidentiary Submissions). It is critical that plaintiffs do not dispute Scott Zeitz's testimony on behalf of GMAC as to the total amount owed on the loan. Since it is undisputed that the coverage limit under the policy is $32,311.00, there is no residual amount of

insurance coverage over and above GMAC's insurable interest. Plaintiffs, therefore, are not named insureds or additional insureds under the policy terms and have no standing to bring a breach of contract claim or bad faith claim under the policy. (See Balboa Reply Brief, Doc. No. 24, pp. 2-3). This inescapable conclusion does not, however, deprive the Court of subject matter jurisdiction. Instead, it compels this Court to enter summary judgment in favor of defendants, dismissing plaintiffs' claims with prejudice.

Furthermore, plaintiffs also claim that they are third-party beneficiaries under the contract and are entitled to payment of all unpaid money up to the coverage limits. There is no indication that plaintiffs have in any way limited or reduced the amount that they are claiming on the third-party beneficiary theory. As extensively discussed in Balboa's summary judgment briefing, plaintiffs cannot recover as third-party beneficiaries because they are not intended beneficiaries under the policy contract. (Balboa Reply Brief, pp. 4-10). Their claim, however, is clearly "in controversy" for the purposes of this Court's subject matter jurisdiction.

This Court should grant summary judgment in favor of Balboa based on Balboa's valid defenses to plaintiffs' claims. Those defenses, however, do not divest this Court of jurisdiction. Controlling law in this circuit provides that a valid defense to the claims in the complaint does not diminish the amount in controversy and oust the court of jurisdiction. *Anderson v. Moorer*, 372 F.2d 747, 750-751 (5th Cir. 1967); *Reisman v. New Hampshire Fire Ins. Co.*, 312 F.2d 17, 19 (5th Cir. 1963).[3]

In *Reisman*, the original suit claimed $9,000.00 under an insurance policy plus $31,000.00 in additional damages relating to alleged negligent acts. After the court granted summary judgment in favor of the defendant insurer, holding that they were not liable for any

---

[3] Fifth Circuit decisions prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

amount in excess of $9,000.00, plaintiff argued that the court was divested of jurisdiction since there was not more than $10,000.00 in controversy. In rejecting this claim, the court held as follows:

> We disagree. The decisions under 28 U.S.C.A. § 1447, make it clear that once jurisdiction is attached, it cannot be subsequently divested. In order to require remand back to state court for lack of jurisdiction, there must have been a lack of jurisdiction at the time of removal from the State court to the Federal court. At the time of the removal, there was a bona fide claim in excess of $10,000.00. We find that the District Court had jurisdiction.

*Reisman,* 312 F.2d at 19. (citations omitted). *See also Anderson*, 372 F.2d at 750 (the existence of a valid defense of res judicata is not sufficient to diminish the amount in controversy and to oust the court of jurisdiction, even if that defense appears on the face of the complaint). *Seafoam, Inc. v. Barrier Systems, Inc.*, 830 F.2d 62, 66 (5th Cir. 1987) (if a statute of limitations defense reduces the amount claimed to an amount lower than the jurisdictional amount, the district court still has jurisdiction to adjudicate the rest of the claim).

In the present case, based on the above and the facts and authority discussed in Balboa's summary judgment briefing, the defense that plaintiffs lack standing completely bars their recovery in this case. Under the above case law, however, even if that standing defense merely reduced plaintiffs' recovery to an amount below the jurisdictional threshold, the reduction based on that defense would not deprive the Court of jurisdiction.

## **CONCLUSION**

Based on Balboa's original Notice of Removal, and the above facts and authority, Balboa has made a sufficient showing that this Court has subject matter jurisdiction over this case. Plaintiffs have not disputed that their claim is in excess of the jurisdictional minimum. In fact, they have affirmatively stated that their claim is far in excess of that jurisdictional threshold. Accordingly, this Court should retain jurisdiction over this matter.

Respectfully submitted,

*s/Henry T. Morrissette*
HENRY T. MORRISSETTE
Bar No.: 7622-E54H

OF COUNSEL:

HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama  36601
Telephone:	(251) 432-5511
Fax:		(251) 694-6375
E-Mail: hmorrissette@handarendall.com

        STEPHEN N. FITTS, III
        Bar No.: 9079-T52F

HAND ARENDALL, LLC
2001 Park Place North, Suite 1200
Birmingham, Alabama  35203
Telephone:  (205) 324-4400
Facsimile:  (205) 397-1316
E-Mail: sfitts@handarendall.com

        Attorneys for Defendant Balboa Insurance Company

## CERTIFICATE OF SERVICE

I do certify that on **April 3, 2008**, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, and request the Court to serve the same electronically, on the following counsel:

Joseph Dan Talmadge , Jr.     dtalmadge@mcatlaw.com

      *s/Henry T. Morrissette*
      OF COUNSEL

746821

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

BILLY WILLIAMS and )
TERESA WILLIAMS, )
                             )
      Plaintiffs, )
                             )
v. ) CASE NO. 1:07-CV-549-WHA
                             )
BALBOA INSURANCE COMPANY, )
                             )
      Defendants. )

## PLAINTIFFS' FIRST AMENDED INITIAL DISCLOSURES

Plaintiffs amend paragraph "c" of their initial disclosures as follows:

"c.    **A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 document or other evidentiary material, not privileged or protected form disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.**

Plaintiffs are entitled to recover defendant's insurance policy limits. Defendant has represented those limits to be $32,311.00, but discovery is ongoing as to amount of limits. Plaintiffs are entitled to recover mental anguish damages for defendant's breach of contract and bad faith refusal to investigate and pay the claim. Plaintiffs are entitled to recover extra-contractual damages, including punitive damages, for defendant's bad faith refusal to investigate and pay the claim. The exact amount of plaintiffs' damages are to be determined by the jury."

Plaintiffs adopt and incorporate the remainder of the initial disclosures as if set out here in full.

**EXHIBIT 1**

                              */s/ Dan Talmadge*
Dan Talmadge (TAL013)
Attorney for Plaintiff
MORRIS, CARY, ANDREWS
TALMADGE, JONES & DRIGGERS, LLC
Post Office Box 1649
Dothan, Alabama 36302
Telephone: (334) 792-1420
Facsimile: (334) 673-0077
Email: dtalmadge@mcatlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that I have this 7th day of February 2008, served a copy of the foregoing by electronic service or by placing a copy of same in the United States mail, postage prepaid and addressed properly to the following:

Henry T. Morrissette
HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama 36601

Stephen N. Fitts, III
HAND ARENDALL, L.L.C.
2001 Park Place North, Suite 1200
Birmingham, Alabama 35203

                              */s/ Dan Talmadge*
Dan Talmadge

# MORRIS CARY ANDREWS

MORRIS, CARY, ANDREWS, TALMADGE, JONES & DRIGGERS, LLC

———————————— Attorneys At Law

JOSEPH A. MORRIS[1]
TRACY W. CARY[2]
S. MARK ANDREWS[3]
DAN TALMADGE[1]
M. ADAM JONES[1]
CORY H. DRIGGERS[3]

OF COUNSEL:
WILKES C. ROBINSON[4]
Federal Judge Retired

3334 Ross Clark Circle
Post Office Box 1649
Dothan, Alabama 36302
Tel 334 702 0000
Fax 334 673 0077

1785 Taliaferro Trail, Suite 5
Montgomery, Alabama 36117
Tel 334 260 4911

www.MorrisCaryAndrews.com

February 8, 2008

<u>Via Facsimile (251) 694-6375 and U.S. Mail</u>

Henry T. Morrissette
HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama 36601

Re:   <u>Billy and Teresa Williams v. Balboa Insurance Company</u>
      U.S. District Court, Middle District of Alabama
      1:07-CV-549-WHA

Dear Henry:

    I have now received approval from my clients to make a settlement demand in this case. I write to provide that demand and to set forth the reasons supporting my evaluation of the case.

    On February 2, 2006, a fire destroyed the home of Billy and Teresa Williams. The Williams made a claim for the damage on the insurance policy issued by Balboa. Balboa sent an adjuster to the site that was more interested in fishing on the property than assessing the damage. The damage assessment completed by the adjuster was totally inadequate. The adjuster estimated the damage at $14,261.16, then arbitrarily adjusted that amount by a standardless "depreciation" amount of $5,312.85. The local adjuster indicated that the loss should be settled for $8,948.31.

    In March 2006, Teresa Williams obtained three repair estimates from local contractors. The repair cost was determined to be $41,500.00 by Jerry Gentile, $44,758.00 by Eric Dingman of B&B Construction and $55,893.00 by Grimes Roofing. Although there naturally will be some discrepancies between damage assessors, the $36,000.00 difference between Balboa's estimate and the lowest contractor estimate cannot be reasonably explained.

**EXHIBIT 2**

---

[1]Member of Alabama & Florida Bars • [2]Member of Alabama, Florida, Georgia, Tennessee & Washington, D.C. Bars
[3]Member of Alabama Bar • [4]Member of Alabama, Missouri & Virginia Bars

After Teresa Williams sent the contractor estimates, Balboa promised to pay the B&B estimate on condition that Eric Dingman fill out a more detailed form. Mr. Dingman filled out the requested form. Unfortunately, Balboa did not pay the claim as promised, but rather asked the same adjuster that previously erred in his assessment to perform another estimate. This adjuster then waited six months until September 26, 2006 to conduct this task. Acknowledging some of his prior errors, the adjuster increased the replacement cost to $20,106.76, took arbitrary "depreciation" of $7,323.04 and recommended that the loss be settled for $12,783.72. The adjuster's revised estimate was still about $21,000.00 off the lowest contractor estimate.

In the meantime, Billy and Teresa obviously could not occupy the home in its damaged condition and were forced to make other living arrangements. The cost of these arrangements necessitated that the Williams' small income be re-directed from payment of their mortgage with GMAC. This resulted in GMAC instituting foreclosure proceedings on this property that had been in the Williams family for generations.

It has been slightly more than two years since the fire. There is no reason in the world that this claim should not have been resolved for the $32,311.00 policy limits within thirty days of the loss. Instead, Balboa refused to fairly investigate or assess the loss, which caused great stress and turmoil in the lives of my clients.

In terms of damages, plaintiffs are obviously entitled to the $32,311.00 in policy limits given that there home is a total loss. However, the time for settling within policy limits has passed. Plaintiffs are now entitled to recover damages for mental suffering and punitive damages.

Mental anguish damages are recoverable in a breach of contract action under Alabama law "if the jury is satisfied that the contractual duties imposed by the contract are so couple with matters of mental solitude as to the duty that is owed, that a breach of that duty will necessarily or reasonably result in mental anguish." Independent Fire Ins. Co. v. Lunsford, 621 So. 2d 977 (Ala. 1993). The Alabama Supreme Court has allowed mental anguish for breach of contract in a case involving the denial of an insurance claim for windstorm damage to the awning of a plaintiff's mobile home. Id. The federal court in the present action will likewise allow such the mental anguish claim to proceed.

I believe a jury will be receptive to a per diem argument in compensating the Williams' for mental anguish damages. For example, if the case were tried today, it would be reasonable to request that the jury award $5.00 per hour for 16 waking hours per day for 1 year and 11 months. This calculates to the sum of $56,000.00. A higher hourly amount could easily be justified. The proposed $7.25 minimum wage would yield $81,200.00.

With respect to punitive damages, I could easily see a jury simply multiplying the compensatory amount by three or four. This would yield a verdict of somewhere between $264,933.00 and $454,044.00. However, we know a 1:1 ratio has been upheld by the U.S. Supreme Court so that would yield a verdict between $176,622.00 and $227,022.00.

Based on all of the foregoing, plaintiffs hereby demand the sum of $175,000.00 to settle this case. Please get back with me on this as soon as you can.

Sincerely,

Dan Talmadge